Decided November 3, 1988

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

IN RE                          )      CIVIL ACTION NO. 87-660
                               )
                               )
    DOLORES M. SAN NICOLAS,     )      DECISION AND ORDER
                               )
Appeal from the                )
Civil Service Commission.      )
_____)

Dolores  M. San Nicolas seeks judicial review pursuant
to 1 CMC S 9112 of the September 14, 1987 decision of the  Civil
Service  Commission  (CSC) entitled In the Matter of Dolores M.
San Nicolas, Adverse Action No. 87-001.

## PROCEDURAL POSTURE

On March 27, 1987 plaintiff was notified of a  proposed
decision  that  her  employment with the Department of Public
Safety (DPS) be terminated  for  cause.   On  April 7,  1987
plaintiff  was  terminated for cause effective April 27, 1987.
Plaintiff subsequently appealed this termination to the CSC  and
hearings  in  this  matter began June 22, 1987.  In a written
decision dated September 14, 1987 the CSC  upheld  plaintiff's
termination.   On  October 13, 1987 plaintiff filed a complaint

542

in this court in the nature of an appeal seeking a review of the adverse decision rendered by CSC.

## STANDARD OF REVIEW

In reviewing the actions of the CSC in upholding the termination of plaintiff, this court "shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 1 CMC § 9112. This court may set aside any agency action which is unsupported by "substantial evidence." 1 CMC § 9112(f)(2)(e). As the findings of the CSC are presumed correct, the employee has the burden of establishing some error or impropriety on the part of CSC which would constitute "prejudicial error." Estate of Taisakan, 1 CR 326, 335 (D.C.App.Div. 1982).

## ANALYSIS

Plaintiff initially contends that neither DPS or CSC complied with their own regulations in terminating plaintiff and their failure to act in accordance with these regulations cannot be sustained. While it is generally true that an agency must follow its own regulations, Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959), in some circumstances agencies may depart from their own regulations, Roberts v. Lincoln County School District No. One, 676 P.2d 577, 580 (Wyo. 1984). Most courts which have allowed departures have based

543

their conclusions on findings that the regulation which was violated was intended to govern internal agency procedure, rather than to protect the interest of the objecting party. Id., quoting 87 Harvard Law Review 629, Violations by Agencies of their own Regulations. In this case, plaintiff alleges that DPS and CSC did not follow their own internal procedures in terminating plaintiff's employment. However, as will be discussed _infra_, these departures from procedure did not result in any detriment to plaintiff and must be regarded as _de minimis_.

Plaintiff's complaint contains two distinct components. First, plaintiff contends that the procedures used to terminate her employment did not comply with the necessary statutory or regulatory provisions. Second, plaintiff maintains that the actual evidence placed before the CSC was insufficient to sustain the charges made against plaintiff.

### A.   Procedural Claims.

Plaintiff has made a number of objections to the procedures used to terminate her. These objections will be dealt with in the order in which they were presented to the court.

1.   The letter of March 27, 1987 proposing adverse action against plaintiff was not "prepared by a person who has been trained in the technical requirements of processing an adverse action..."

Part III.D3L of the Personnel Service Systems Rules and Regulations (Rules and Regulations) reads, in pertinent part, as follows:

"The letter of proposed adverse action must be prepared by a person who has been trained in the technical requirements of processing an adverse action and must be reviewed by the Personnel Officer and the Attorney General, or their designees, before issuance."

The letter of proposed adverse action, dated March 27, 1987, was drafted by Edward Manibusan (Manibusan). At the administrative hearing Manibusan testified that, although he is an attorney, he did not have any specific training in the technical requirements of processing an adverse action. However, despite the fact that the March 27, 1987 letter was not drafted by someone specifically trained in the requirements of processing an adverse action, this can hardly be termed a prejudicial error. With the exception of the lack of technical training on the part of the drafter, the letter of proposed adverse action complies with Part III.D3L of the Rules and Regulations in all respects. More importantly, plaintiff has not alleged, nor can the court ascertain any basis for any allegations that any lack of technical training on Manibusan's part resulted in any prejudice to her.

Lastly, the requirement of having a trained person prepare the letter and then having other government officials review the letter is more of a shield for the Government than a sword for the employee.

2. <u>Plaintiff was not kept on active duty during the notice period.</u>

Pursuant to the March 27, 1987 letter plaintiff was suspended from active duty and asked to surrender her uniform and equipment. Plaintiff contends that this suspension violated the provisions of Part III.D3L(5) of the Rules and Regulations in that no "emergency" existed which would necessitate plaintiff's suspension.

Part III.D3L(5) of the Rules and Regulations reads as follows:

> "If at all practicable, the employee must be kept on active duty in his regular position during the notice period. However, in an emergency, the employee may be suspended during the adverse notice period and placed on Leave Without Pay (LWOP) or, with the employee's consent, he may be carried on annual leave."

Notably, the term "emergency" is not defined in the above section. At the administrative hearing Manibusan was asked why plaintiff was taken off active duty. Manibusan indicated that he considered an emergency situation to exist as, among other things, plaintiff had indicated that she would not follow orders and had previously created a situation in which two guards were left to oversee 38 inmates at the Department of Corrections (DOC). The record thus contains an adequate basis for the decision that it was not practicable to keep plaintiff on active duty during her notice period. Again, plaintiff has not alleged that she was prejudiced by being suspended during her notice period. Indeed, this relief from active duty would

have seemingly given plaintiff more time to prepare a response to the letter of adverse action - a response that never came.

### 3. Plaintiff was not given adequate time to reply to the letter of proposed adverse action.

Part III.D3L(3) and Part III.F2F of the Rules and Regulations both indicate that an employee faced with a proposed adverse action must be allowed a "reasonable" time to respond thereto. Neither of these sections define the term "reasonable."

In this case, plaintiff was informed of the proposed adverse action by a letter dated March 27, 1987. This letter clearly stated that plaintiff had 10 calendar days in which to reply. The letter goes on to state that this 10 day period "may be extended if you submit a written request to me (Manibusan) stating the reason needed for additional time. A written decision will be issued to you as soon as possible after your reply is considered, or upon expiration of the reply period, if you choose not to reply." No reply or request for extension of time was received and the proposed action against plaintiff was affirmed on April 7, 1987.

This court is of the opinion that 10 days was a reasonable time to respond to the letter, especially in light of the fact that plaintiff was adequately informed of the 10 day reply period and could have requested more time to reply if she deemed the 10 day period to be unreasonable.

4. The letters of March 27, 1987 and April 7, 1987 do not state what regulations were violated.

1 CMC § 9109 states, in part, that "(a) persons entitled to notice of an agency hearing shall be timely informed of ... (3) the particular sections of the statutes and regulations involved ..."

The letter of proposed adverse action contains 11 reasons for terminating plaintiff for cause. After these reasons the letter contains the following paragraph enumerating the specific regulations alleged to have been violated:

> The charges listed above are direct violations of Commonwealth of the Northern Mariana Islands Personnel Service System Rules and Regulations, Part V, Sub Part D, Sections V.D1A., B., C., and D. Your actions are in violation of Sections V.D2 [Policy on Employee Conduct], V.D3 [Subordination to Authority], and VII.8A [Unauthorized Leave]. These charges also constitute violations of the Department of Public Safety Rules and Regulations, specifically, but not limited to, D.1., D.7., D.8., D.9., D.11., D.12., D.15., D.16., D.18., D.19., D.30., E.6., E.21., H.1B., J.7., J.12., J.14., K.1., K.11., and L.7.

There can be no doubt that plaintiff was timely informed of the particular sections of the regulations involved. The fact that none of the 11 paragraphs specifically refer to any of the enumerated regulations is of no significance because plaintiff was timely informed of exactly which regulatory provisions she was alleged to have violated — all in accordance with 1 CMC § 9109(a)(3). Likewise, the fact

that the April 7, 1987 letter did not reiterate which regulations were involved is of no moment since plaintiff had previously been informed of the specific regulations involved in the March 27, 1987 letter.

Finally, the March 27, 1987 letter clearly informed plaintiff that she was entitled to review all the materials used in support of the proposed action and that she could contact Administrative Services for a further explanation of the reasons for the proposed action. If plaintiff was for some reason unsure of what regulations she was alleged to have violated, she had ample opportunity to seek further clarification.

5. <u>Factual bases for proposed adverse action not set forth</u>.

Plaintiff next contends that the factual bases for the proposed adverse action were not set forth with specificity and detail as required by Part III.D3L(2) of the Rules and Regulations. The gist of plaintiff's contention here is that the allegations contained in the letter of March 27, 1987 were too general and, thus, precluded any response.

A review of the 11 paragraphs which provide the bases of the proposed adverse action indicates that these paragraphs contained all pertinent facts necessary to apprise plaintiff of the specific reasons for the proposed action. It would, therefore, have been quite possible for plaintiff to respond to

**549**

the specific allegations made in these paragraphs had she availed herself of the opportunity to do so.

Once again, the March 27, 1987 letter clearly states that plaintiff had the opportunity to seek further explanation for the reasons for the proposed adverse action against her. If she had questions regarding the factual bases for the proposed adverse action, she had both notice and opportunity to review the material used in support of the action and have the reasons for this action explained to her.

B.   Substantive Claims.

6.   Burden of proof.

1 CMC § 9109(i) states that the proponent of an order or decision has the burden of proof. The "burden of proof" as used in this section means the burden of going forward with evidence. N.L.R.B. v. Transportation Mgmt. Corp., 462 U.S. 393, 403 n.7, 103 S.Ct. 2469, 2475 n.7, 76 L.Ed.2d 667 (1983).

At the hearing on this matter the hearing officer placed the burden on plaintiff of establishing that there were procedural violations in the termination of her employment. Although there was no objection at the time, plaintiff now contends that the burden of proof was reversed in violation of 1 CMC § 9109(i).

In reviewing the alleged procedural defects cited by plaintiff the court notes that the issues of whether the particular regulations alleged to have been violated by

plaintiff were contained in the March 27, 1987 letter, and whether the allegations in that letter were specific enough are questions which do not require the presentation of evidence; either the 10 days was sufficient or it was not; either the particular regulations were stated or they were not; either the allegations were specific or they were not.

With respect to the issue of Manibusan's technical training, plaintiff called him and asked him whether he had such training. His reply was that he had not. Thus, the inquiry is completed. As previously noted, this lack of training is of no significance as plaintiff was in no way prejudiced thereby.

Likewise, whether a sufficient "emergency" existed to preclude plaintiff from remaining on active duty pending final termination was determined by Manibusan's response to plaintiff's questions as to what factors constituted this "emergency." Although it would have been proper to have the Government establish these factors, who initiated the inquiry is not important since plaintiff was not prejudiced by this procedure. As noted above (Part A.2), this does not have a direct bearing on whether CSC was correct or not in its final decision.

Finally, a review of the hearing transcript indicates that the Government provided sufficient evidence to sustain its burden of proof on all substantive issues. Therefore, the reversal of the burden of proof with regard to the procedural issues was harmless error.

551

7. **Not all the CSC members attended all the evidentiary hearings or heard all the arguments.**

█  Plaintiff contends that it was a violation of due process for the CSC members to render a decision without attending the hearings. This argument is clearly without merit as 1 CMC § 9110(a) sanctions such a procedure.

8. **The entire CSC did not vote on plaintiff's appeal.**

Part III.A10E of the Rules and Regulations declares that decisions of the CSC "shall be made by a two-thirds (2/3) vote of the entire members..."

It is plaintiff's position that the law requires a two-thirds vote of the entire commission. This is true and was complied with in this case. Here, five out of the seven members of the CSC voted to affirm plaintiff's termination. Five out of a possible seven is clearly more than a two-thirds majority and is sufficient for purposes of Part III.A10E of the Rules and Regulations.

9. **The hearing officer failed to recommend a decision to the CSC and failed to allow the parties to propose findings and conclusions.**

█  1 CMC § 9110(a) provides that when the agency does not preside at the reception of evidence, the person presiding shall initially decide the case unless applicable law or agency rule requires. From the record, it cannot be determined if the hearing officer initially decided the case or whether this was

**552**

done by the entire CSC. Likewise, the court cannot ascertain whether the CSC has any rule applicable to this situation. Here, a complete transcript of the proceedings was available to the CSC prior to the issuance of its decision. Therefore, even if the hearing officer did not initially decide the case, this error can only be termed harmless since he voted in favor of upholding plaintiff's termination.

1 CMC § 9110(b) states that, prior to the decision, the parties are entitled to a reasonable opportunity to submit various proposals and recommendations. This section requires only that the parties be entitled to a reasonable opportunity to submit proposed findings and conclusions, it does not require the agency issuing the decision to solicit them. However, even if the CSC was required to solicit such proposals, the fact that it could choose to ignore any and all such proposals makes the failure to do so merely harmless error.

10. <u>The decision failed to set forth specific findings of facts and conclusions of law.</u>

1 CMC § 9110(c) states, in part, that "[a]ll orders or decisions ... shall include a statement of ... [f]indings and conclusions, and the reasons or basis for them, on all material issues of fact, law, or discretion presented on the record..."

In this instance, the findings, conclusions, and reasons therefore are contained and presented in the following paragraph from the decision:

"The Commission has carefully examined the transcript of the testimony of the witnesses, and the evidence presented by the parties in this hearing. Based on this review, the Commission finds that all of the allegations contained in the April 7, 1987 letter are well-founded and supported by the evidence, with the exception of Allegation No. 3...."

The ultimate test as to the adequacy of the findings of fact is whether they are sufficiently comprehensive and pertinent to the issues so as to provide a basis for the decision and whether they are supported by evidence. Lumbermen's Underwriting Alliance v. Con-Con, Inc., 645 F.2d 17, 18 (9th Cir. 1980). Specific findings need not be made on all facts, only on the ultimate facts necessary to reach a decision. Falcon Equip. Corp. v. Courtesy Lincoln Mercury, Inc., 536 F.2d 806, 808 (8th Cir. 1976).

Plaintiff maintains that these findings are not in conformance with 1 CMC § 9110(c) since they do not specifically state what facts were relied upon for this conclusion. However, the findings specifically state that all the allegations except paragraph three are supported by the evidence thus incorporating by reference the ultimate facts used by CSC to reach its decision. A review of the transcript indicates that each of these ten allegations was supported by abundant evidence.

11. The conclusions reached by the CSC are not supported by substantial evidence.

Plaintiff correctly points out that agency action must be supported by substantial evidence. 1 CMC § 9112(f)(2)(E). However, plaintiff does not point out any reasons to indicate that the findings of CSC were not supported by substantial evidence. The configuration of this case is in the nature of an appeal. Therefore, plaintiff bears the burden of establishing that there was no substantial basis in evidence to sustain the findings and that failure to reverse the decision of CSC would result in the miscarriage of justice. Matter of Christian and Porter Aluminum Co., 584 F.2d 326, 335 (9th Cir. 1978). Plaintiff has not met this burden and this court is not disposed to proceed on a search and rescue mission in an attempt to validate this claim. A review of the transcript of the hearing conducted in this case reveals substantial evidence for the CSC's findings in conformance with 1 CMC § 9112(f)(2)(E).

## ORDER

IT IS ORDERED that the Decision of the Civil Service Commission which affirmed the termination of Dolores M. San Nicolas be and the same is hereby AFFIRMED.

Dated at Saipan, MP, this 3rd day of November, 1988.

Robert A. Hefner, Chief Judge

555