Shirley ROBERTS, Appellant (Plaintiff),

v.

LINCOLN COUNTY SCHOOL DISTRICT NUMBER ONE, Appellee (Defendant).

No. 83–125.

Supreme Court of Wyoming.

Feb. 16, 1984.

Patrick E. Hacker of Graves, Hacker &
Phelan, Cheyenne, for appellant.

Dennis L. Sanderson, Afton, for appellee.

Before ROONEY, C.J., THOMAS, ROSE and CARDINE, JJ., and RAPER, Justice, Ret.

CARDINE, Justice.

This appeal is from a judgment upholding the Lincoln County School Board's decision to terminate the employment of appellant. We will affirm.

The issues, as stated by appellant, are:

"1. Is a decision of a school board made in violation of its own policies and rules arbitrary and capricious?

"2. Does a violation of school board policies incorporated into an employment contract, constitute an actionable breach of contract?

"3. Is the nonrenewal of an initial contract teacher for educational philosophies or methods without previous warning a violation of constitutionally protected rights?"

Appellant, Shirley Roberts, was employed by the Lincoln County School District No. One in 1977 as a physical education teacher and the high school girls volleyball and basketball coach. During her second year of teaching, she experienced difficulties as a basketball coach and was relieved of these duties. Her third year of teaching involved coaching the high school volleyball team and the eighth grade girls basketball team. During the third year, appellant ran into difficulties with the volleyball team. The students who created problems on the volleyball team also created problems in one of appellant's P.E. classes. The superintendent and principal evidently decided that it would be better to get a different physical education teacher who could handle both the P.E. classes and the coaching duties.

Appellant was told by the superintendent that he was not going to recommend that her contract be renewed because he was not satisfied with the direction the coaching program was going. The Board of Trustees accepted the superintendent's recommendation and sent appellant a letter formally notifying her of this decision. The letter stated that as an initial contract teacher, she was not entitled to a hearing upon the reasons for termination, but that she did have a right to a hearing on the issue of whether or not her constitutional or due process rights had been violated.

Appellant asked for a hearing which was held before an independent hearing examiner who made proposed findings of facts and conclusions of law. The Board of Trustees incorporated these findings into its decision and order. Appellant appealed the board's decision to district court. In addition to the appeal, the appellant alleged breach of contract and a federal civil rights action. The court announced its decision in favor of appellee on all counts.

I

*Whether the school board's decision was arbitrary and capricious.*

Appellant contends that the school board had in effect a manual of Policies and Regulations which were not followed; and, therefore, their decision was prima facie arbitrary and capricious. Appellant was an initial contract teacher. The only statutory requirement for terminating an initial contract teacher is that they be notified of the termination no later than March 15 of each year.[1] An initial contract teacher has no statutory right to a statement of reasons for termination or to a hearing. They do not have a claim, entitlement, or reasonable expectation of re-employment. Therefore, they do not have a property interest under state law or otherwise. *O'Melia v. Sweetwater County School District No. 1*, Wyo., 497 P.2d 540 (1972); *Schmidt v. Fremont County School District No. 25*, 406 F.Supp. 781 (Wyo.1976);

---

1. Section 21–7–105, W.S.1977, provides:
 "An initial contract teacher who has taught in the system continuously for a period of at least ninety (90) days shall be hired on an annual basis and shall be notified in writing of termination, if such is the case, no later than March 15 of each year."

*Bertot v. School District No. 1, Albany County, Wyoming,* 522 F.2d 1171 (10th Cir.1975).

■■■■ The school board is the governing body of the school district. It has wide discretion in the management of school affairs. *Hyatt v. Big Horn School District No. 4,* Wyo., 636 P.2d 525 (1981). The board has the power to employ teachers, § 21–3–111(a)(vi)(C), W.S.1977; approve salary provisions, § 21–7–104, W.S.1977; terminate initial contract teachers, § 21–7–105, W.S.1977; and suspend or dismiss teachers, § 21–7–110, W.S.1977. We will interfere with school board actions if they are arbitrary and capricious or fraudulent; however, we will not otherwise substitute our judgment. Absent abuse, we will not interfere with the exercise of discretionary acts authorized by statute. *Hyatt v. Big Horn School District No. 4,* supra.

Appellant received one formal evaluation during the school year in which her contract was not renewed. Although appellant did not have a property right to reemployment, she nevertheless contends that because policies and regulations of the school district requiring four evaluations during the school year[2] were not followed, the decision to terminate must be reversed.

Appellant contends that the school district's failure to follow its own evaluative policies and regulations is patently arbitrary and capricious, and relies upon *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3

L.Ed.2d 1012 (1959) for the proposition that when an agency promulgates regulations, a failure to act in accordance with the procedures set forth therein cannot be sustained. We accepted this principle in *Keslar v. Police Civil Service Comm'n, City of Rock Springs,* Wyo., 665 P.2d 937 (1983). Keslar and Vitarelli stand for the proposition that an individual whose status or position is being affected by agency action has the right to enforce those agency rules which were promulgated and designed to afford protection in the given situation.

■■■■ However, in some circumstances agencies may depart from their own regulations. Thus,

"* * * Most courts which have allowed departures have based their conclusions on findings that the regulation which was violated was intended to govern internal agency procedures, rather than to protect any interest of the objecting party. * * *" (Footnotes omitted.) 87 Harvard L.Rev. 629, Violations by Agencies of their own Regulations.

*Willis v. Widefield School District No. 3,* 43 Colo.App. 197, 603 P.2d 962 (1979), involved nontenured teachers and school district procedures which required teachers to be evaluated twice a year. The policy stated that this requirement had the primary purpose of improving the quality of teaching and the secondary purpose of retention or dismissal. The court held that a failure to follow the evaluation procedures did not

2. "EVALUATION OF PROFESSIONAL STAFF TEACHERS

"Formal valuations for nontenure teachers shall be made at least four times each year on forms to be provided. The first two evaluations shall be completed before December, and the second two before March of each school year.

 * * * * * *

"The minimum basic procedures leading to formal evaluations of teachers shall include the following:

"1. The principal or his designated representative (assistant principal, district administrator, and/or supervisor) shall visit each teacher in the classroom several times during each school year and shall record the general nature of visitations on a form to be provided, with a copy for the teacher and the principal.

All observations shall be conducted openly and with the full knowledge of the teacher. A teacher or the principal or his designated representative may request a conference to discuss the visit.

"2. At least once each year in the case of tenure teachers, and *at least twice each year in the case of nontenure teachers,* the principal or his designated representative shall schedule a formal evaluative interview with each teacher prior to the evaluation deadlines established.

 * * * * * *

"Current practice codified 1978.
Board-approved and issued: date of manual adoption
"School District No. 1, Lincoln County, Kemmerer, Wyoming" (Emphasis added.)

invalidate a decision to terminate a nontenured teacher.

The purpose for these evaluations is set forth in the manual of Policies and Regulations of School District No. One under Evaluation of Professional Staff Teachers, and is stated as:

" * * * to assist teachers to develop and strengthen their professional abilities through an assessment of strengths and weaknesses. Teacher evaluation shall be a process through which the principal provides guidelines, suggests ways to overcome difficulties, makes commendations, and determines the progress of a teacher's professional performance. Exceptional performance by a staff member should also be recognized on such occasion."

In this case, the regulations establishing evaluative policies were not designed for the protection of nontenured teachers such as appellant, but were primarily for the benefit of the school district in performing its operational and supervisory duties.

 Their purpose was not termination or retention. Even if the evaluations had been performed and been favorable, appellant would not have been protected against an arbitrary or capricious discharge. If one can be dismissed for no reason at all, one can be dismissed without reasons supported by facts. *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1 (7th Cir.1974). The policy that evaluations should be made did not give appellant a constitutionally protected property right in the renewal of her contract. See *Weathers v. West Yuma County School District R–J–1*, 530 F.2d 1335 (10th Cir.1976).

 We recognize the policy that agencies should be aware of their regulations and that these regulations should be followed. However, in order to invalidate an agency's decision, the regulation in question must have some connection with the decision. Appellant was an initial contract teacher. As such, she had no statutory or other legally protected property or interest in continuing employment. We cannot find

that the stated evaluation policies created a right; and, therefore, the failure to follow them did not affect the decision to terminate.

In the present situation, evaluations were required for classroom teachers. Appellant was dismissed for reasons concerning her outside duties as a coach. She was not terminated for her classroom performance. Appellant was relieved of her initial position as basketball coach because of difficulties. In her third year of teaching, she experienced problems with the volleyball team. These problems were characterized as morale and discipline problems. The administrators evidently felt that they had a choice of relieving appellant of these duties also or of hiring a teacher who was adequate in both classroom performance *and* coaching abilities.

The cases cited by appellant in support of her position can be easily distinguished. They either involve tenured teachers (*Wojt v. Chimacum School District No. 49*, 9 Wash.App. 857, 516 P.2d 1099 (1973); *Brininstool v. New Mexico State Board of Education*, 81 N.M. 319, 466 P.2d 885 (1970)), or procedures specifically geared toward the purpose of termination (*Trimboli v. Board of Education of Wayne County*, W.V., 280 S.E.2d 686 (1981); *Lehman v. Board of Education of City School District of City of New York*, 82 A.D.2d 832, 439 N.Y.S.2d 670 (1981)).

 We find that the procedures concerning evaluation of probationary teachers are not related to the decision to retain or terminate a probationary teacher. A separate section of the school district's rules and regulations apply specifically to the termination, suspension, or dismissal of teachers and pupils. This section states that:

"Section 2. *Termination of Initial Contract Teachers.* The contract of an initial teacher may be terminated by the Board upon notification in writing of such termination by registered or certified mail to the last known address of such initial contract teacher no later than

March 15 of each year. Proof of such written notice together with the proof of mailing, shall be kept and retained in the records of the school district."

The only requirements that the board must satisfy before terminating an initial contract teacher is that the teacher must be notified no later than March 15 of each year and a hearing must be provided if there is an allegation that the teacher's constitutional rights have been violated. The school district satisfied these requirements and acted properly in the termination of appellant.

## II

*Did the violation of these policies constitute an actionable breach of contract?*

Appellant contends that the evaluation policies were incorporated into her teacher employment contract; and, therefore, the school district's inaction regarding the evaluations resulted in a breach of contract. The applicable contract provisions are:

"3. DUTIES OF TEACHER: The teacher shall perform all duties and services of a teacher faithfully and satisfactorily at the time, place and for the duration prescribed by the District, and as directed by the superintendent. Teachers shall comply with and abide by all rules and regulations promulgated by the District and all pertinent statutes of the State of Wyoming as they now exist or may from time to time be adopted or modified. *All such, rules, regulations and statutes are incorporated herein by this reference and are made a part of this agreement as if fully set forth.* \* \* \*

\* \* \* \* \* \*

"5. TERMINATION: Until a teacher obtains continuing contract status as defined by the Wyoming Teacher Employment Law, the teacher hereby acknowledges that he/she is employed on an annual probationary basis and has no expectation of re-employment. *An initial contract teacher's contract may not be renewed solely at the discretion of the board of trustees with or without cause.* Unless otherwise required by

law, an initial contract teacher is not entitled to a hearing upon the reasons for termination." (Emphasis added.)

Section 21–7–112, W.S.1977, states that:

"The contracts of all teachers in the state of Wyoming from and after the effective date of this act shall be subject to the policies, rules, and regulations of the school district not in conflict with this law or the other laws of the state of Wyoming."

Appellant contends that the policies and regulations are made part of her contract; that they required evaluations that were not done; and that the school district, therefore, is in breach of contract. We cannot agree with this proposition. Although the contract is specifically subject to the "policies, rules, and regulations of the school district," these particular provisions did not operate to afford appellant any contractual right of employment.

In *Illinois Education Ass'n Local Community High School District 218 v. Board of Education of School District 218 Cook County*, 62 Ill.2d 127, 340 N.E.2d 7 (1975), the court held that a collective bargaining agreement providing that discharge should be preceded by the faithful exercise of evaluations could not result in the school board delegating its discretionary powers of terminating probationary teachers. The court stated that the reasons for terminating were not related to classroom teaching performance, and there was nothing in the agreement which restricted or expanded the rights of the nontenured teacher.

Here, there are no particular rules or regulations requiring the evaluation of appellant in her coaching duties. Therefore, the failure to evaluate could not and did not matter. The specific provision that an initial contract teacher can be dismissed at the discretion of the school board with or without cause is controlling. The board cannot abrogate its statutory power to terminate nontenured teachers by contract, and that did not occur here.

## III

*Whether appellant's termination is improper because it is based on the violation of constitutionally secured rights.*

The general rule is that the lack of tenure does not, in itself, defeat a claim that the decision was based upon impermissible violations of constitutionally protected interests. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Appellant contends that her termination was improper because it infringed on the right of academic freedom. Appellant states:

> "There was nothing in the evaluative process or the contacts of the administrators to show the plaintiff that she was not meeting the standards of academic content or methodology apparently selected by the administrators."

Academic freedom concerns protected rights. There was no evidence that appellant was terminated for any protected activity; she was terminated because she could not handle the discipline and morale problems of the sport teams. While a non-tenured teacher may not be terminated from employment for exercising a constitutional right of free speech, that person has the burden of proving that the speech or conduct was constitutionally protected. *Schmidt v. Fremont County School District No. 25,* supra; *Buhr v. Buffalo Public School District No. 38,* 509 F.2d 1196 (8th Cir.1974).

Academic freedom involves:

> "* * * [T]he substantive right of a teacher to choose a teaching method which in the court's view served a demonstrated educational purpose; and the procedural right of a teacher not to be discharged for the use of a teaching method which was not proscribed by a regulation, and as to which it was not proven that he should have had notice that its use was prohibited." *Mailloux v. Kiley,* 323 F.Supp. 1387, 1390 (D.Mass. 1971).

Appellant misunderstands the applicable law. Academic freedom does not give one the right to have discipline problems nor to be protected from termination merely because appellant was not aware that the administrators were dissatisfied with the direction of the coaching program. Academic freedom concerns constitutionally protected rights. Appellant has not met the burden of proving that her termination was caused by impermissible reasons nor that constitutionally protected rights were involved.

For the reasons stated in this opinion, the judgment appealed from upholding appellant's termination is affirmed.