Gordon **GRIFFIN** and Red Dome, Inc., Plaintiffs and Appellees,

v.

Sandra **MEMMOTT**; Ralph Memmott; Sue Bushnell; Sheree Bushnell; Jim Bushnell; Brett Sanders; Pam Sanders; and Craig Sanders, Defendants and Appellants.

No. 900136–CA.

Court of Appeals of Utah.

June 24, 1991.

Harold A. Hintze (argued), Olsen, Hintze, Nielson & Hill, Provo, for defendants and appellants.

Dexter L. Anderson (argued), Fillmore, for plaintiffs and appellees.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GARFF, Judge:

Defendants (the Memmotts) appeal from a decree quieting title to certain mining claims in the plaintiffs, Griffin and Red Dome, Inc. (Griffin). Because the Memmotts have no private right of action under the federal statute that is the basis of their claim, we affirm.

This case is the latest installment of a protracted dispute between rival claimants under the General Mining Law of 1872, 30 U.S.C. §§ 22 through 30 (1986). Griffin's predecessors in interest originally located their unpatented claims in the 1930s and in 1950. In 1955, Griffin's predecessors sued the Memmotts in Utah state court, and the court quieted title in Griffin's predecessors and enjoined the Memmotts from trespassing or interfering with the claims. Nevertheless, a few years later the Memmotts again challenged the claims in litigation that the Utah Supreme Court in 1982 held was precluded by res judicata. The Memmotts have also challenged Griffin's claims before the United States Bureau of Land Management (BLM), but the BLM ultimately declined to become involved in a dispute between rival private claimants, and it did not declare Griffin's claims forfeited.

The Memmotts thereupon took their claims from the BLM to the Utah courts in this action. Here, Griffin sued the Memmotts to quiet title and recover for the Memmotts' trespasses in violation of the 1955 injunction. The Memmotts counterclaimed to quiet title on the grounds that Griffin had not properly filed notice of his claims with the BLM, as required by the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. § 1744 (1986). The state trial court denied the Memmotts' counterclaim in a summary judgment, holding that Griffin had supplied sufficient documentation to the BLM to satisfy the purposes of FLPMA, and thus, the claims were not subject to relocation by the Memmotts. The Memmotts appeal that ruling.

We agree with Griffin that FLPMA does not create a right of action in the Memmotts. Whether a federal statute creates a private right of action is primarily a question of statutory interpretation reflecting the intent of Congress. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). The following four factors are informative in ascertaining that intent: (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether Congress intended to create or deny a private remedy; (3) whether a private remedy would be consistent with the statute's underlying purposes; and (4) whether the cause of action traditionally is relegated to state law. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975); *see also Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535–36, 104 S.Ct. 831, 838, 78 L.Ed.2d 645 (1984).

FLPMA does not expressly create a right of action in private parties for noncompliance with its filing requirements. Further, such a right would be out of har-

mony with the intended purpose and effect of FLPMA, which the United States Supreme Court summarized as follows:

From the enactment of the general mining laws in the 19th century until 1976, those who sought to make their living by locating and developing minerals on federal lands were virtually unconstrained by the fetters of federal control. The general mining laws, 30 U.S.C. § 22 et seq., still in effect today, allow United States citizens to go onto unappropriated, unreserved public land to prospect for and develop certain minerals. "Discovery" of a mineral deposit, followed by the minimal procedures required to formally "locate" the deposit, gives an individual the right of exclusive possession of the land for mining purposes, 30 U.S.C. § 26; as long as $100 of assessment work is performed annually, the individual may continue to extract and sell minerals from the claim without paying any royalty to the United States, 30 U.S.C. § 28. For a nominal sum, and after certain statutory conditions are fulfilled, an individual may patent the claim, thereby purchasing from the Federal Government the land and minerals and obtaining ultimate title to them. Patenting, however, is not required, and an unpatented mining claim remains a fully recognized possessory interest. *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 335, 83 S.Ct. 379, 381, 9 L.Ed.2d 350 (1963).

By the 1960's, it had become clear that this 19th-century laissez-faire regime had created virtual chaos with respect to the public lands. In 1975, it was estimated that more than 6 million unpatented mining claims existed on public lands other than the national forests; in addition, more than half the land in the National Forest System was thought to be covered by such claims. S.Rep. No. 94–583, p. 65 (1975). Many of these claims had been dormant for decades, and many were invalid for other reasons, but in the absence of a federal recording system, no simple way existed for determining which public lands were subject to mining locations, and whether those loca-

tions were valid or invalid. *Ibid.* As a result, federal land managers had to proceed slowly and cautiously in taking any action affecting federal land lest the federal property rights of claimants be unlawfully disturbed. Each time the Bureau of Land Management (BLM) proposed a sale or other conveyance of federal land, a title search in the county recorder's office was necessary; if an outstanding mining claim was found, no matter how stale or apparently abandoned, formal administrative adjudication was required to determine the validity of the claim.

After more than a decade of studying this problem in the context of a broader inquiry into the proper management of the public lands in the modern era, Congress in 1976 enacted the FLPMA, Pub.L. 94–579, 90 Stat. 2743 (codified at 43 U.S.C. § 1701 et seq.). Section 314 of the Act establishes a federal recording system that is designed both to rid federal lands of stale mining claims and to provide federal land managers with up-to-date information that allows them to make informed land management decisions.

*United States v. Locke,* 471 U.S. 84, 86–87, 105 S.Ct. 1785, 1788–89, 85 L.Ed.2d 64 (1985). Thus, FLPMA was intended mainly to clear stale or questionable claims from the BLM's title to federal lands, and to improve the BLM's ability to manage those lands. It was intended to serve the BLM's interests, not the interests of disputing private claimants. If a claim is invalidated under FLPMA, the forfeited rights revert to the BLM, and it is under the General Mining Law of 1872, not FLPMA, that private parties can presumably relocate the forfeited claims. *See Locke,* 471 U.S. at 90–91, 105 S.Ct. at 1790. Far from seeking to resolve private claims, FLPMA at most simply initiates a whole new round of claiming and claim-jumping under other legislation. Thus, FLPMA's only conceivable benefit is to the BLM, and its purpose is to serve the BLM's administrative objectives, not those of private claimants.

The rights of mining claimants among themselves have conventionally been adjudicated in litigation under the General Mining Law of 1872 and similar legislation, just as in this case, the rights of these claimants were adjudicated in the 1955 case. Nothing in FLPMA abolishes or alters this method of resolving conflicts between private claimants through litigation. *See* 43 U.S.C.A. § 1732(b) (1986).

To sum up, in view of the express language of FLPMA, its purpose and benefits, and the continued availability of litigation under the General Mining Law, Congress clearly did not provide in FLPMA any right of action for persons in the Memmotts' position. The Memmotts' rights in relation to Griffin were adjudicated in the 1955 litigation, and those rights have still not since provided a basis for invalidating Griffin's claims despite their pertinacity.

In view of the Memmotts' intransigence, Griffin has requested an award of fees and costs on appeal on the grounds that the Memmotts' appeal is frivolous. *See* Utah R.App.P. 33(a). It is true that the Memmotts have no right of action; however, the question is to some extent one of judicial implication in the absence of an express statute, and Griffin does not cite, and we have been unable to find, existing precedent which clearly holds that private parties have no implied right of action for violation of the filing requirements of FLPMA. Since the legal issue resolved in this appeal was thus not clearly settled, this appeal is not frivolous. *See* Utah R.App.P. 33(b). Consequently, even though we empathize with Griffin's frustration, we are constrained to deny his request for sanctions on appeal.

We therefore hold that the Memmotts have no right of action for Griffin's alleged noncompliance with the filing requirements of FLPMA, and therefore, we affirm the summary judgment dismissing the Memmotts' counterclaim, albeit for a reason different from the one given by the district court. *See Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988). We deny Griffin's request for sanctions on appeal. We do not reach the other issues raised on appeal because, since the Memmotts have no private right of action, we have no jurisdiction over the subject matter of their counterclaim. *See Oldfield v. Athletic Congress*, 779 F.2d 505, 508 (9th Cir. 1985).

GREENWOOD and JACKSON, JJ., concur.