**Dianna BROADBENT, Plaintiff and Appellant,**

v.

**BOARD OF EDUCATION OF the CACHE COUNTY SCHOOL DISTRICT, Defendant and Appellee.**

No. 950241–CA.

Court of Appeals of Utah.

Jan. 25, 1996.

---

Michael T. McCoy, Murray, for Appellant.

J. Mark Ward and Jan Graham, Salt Lake City, and L. Brent Hoggan, Logan, for Appellee.

Before ORME, DAVIS and GREENWOOD, JJ.

GREENWOOD, Judge:

Dianna Broadbent appeals the trial court's summary judgment dismissal of her wrongful termination claims against the Board of Education of the Cache County School District (the District). We affirm.

## BACKGROUND

The District initially hired Broadbent on September 20, 1989, to teach special education on a part-time basis. In March of 1990 she became a full-time teacher. It is undisputed that at all relevant times Broadbent was a "provisional" educator, meaning that she was still within a three-year probationary period which commenced in March 1990. Broadbent admitted in her deposition that she was aware of her provisional status and knew that she was entitled to no expectation of continued employment beyond her one-year contract term.

Broadbent was the case coordinator for the evaluation of a student referred to herein as "J.B." Apparently, Broadbent and the director of the special education program, Julie Landeen, did not see eye-to-eye on the issue of whether J.B. should be placed in special education. Landeen felt it would be detrimental to J.B.'s development to classify him as behaviorally disabled. Broadbent disagreed. Landeen made it clear to Broadbent that she did not want J.B. placed in special education. However, in direct violation of Landeen's instructions, Broadbent and other staff members placed J.B. in a special education program on or about February 25, 1992.

Following J.B.'s placement, the principal of Broadbent's school met with Landeen and Broadbent so that Landeen could voice her complaints about the placement of J.B. On March 31, 1992, in accordance with District policy, Broadbent was given the required two-months' notice that her contract would not be renewed.

Broadbent's non-retention is the basis for her action against the District and for the present appeal. Broadbent declares that she was illegally fired in retaliation for advocating the rights of a disabled student. The District, on the other hand, asserts that her contract was not renewed because of her insubordination.[1]

Although neither party alludes to the proceedings following notice of Broadbent's non-retention, it is worth mentioning that Broadbent received substantial due process. The record indicates that Broadbent was entitled to, and subsequently proceeded through, three levels of administrative grievance hearings: First, before her principal; second, before the district superintendent; and third, before an unbiased hearing examiner whose report was submitted to the full Cache County School Board. Her grievance was denied at each stage.

■ In addition to her grievance hearings, Broadbent also filed a claim with the Department Of Education's Office of Civil Rights (OCR). The OCR chose not to pursue Broadbent's claims.[2] After receiving the OCR's no-action letter, Broadbent filed suit against the District. Her complaint was dismissed by the trial court on the District's motion for summary judgment. Broadbent then filed this appeal.

## ISSUES ON APPEAL

Broadbent challenges the District's action on two narrow grounds.[3] First, Broadbent contends that the public policy exception to the employment at-will doctrine provides her with a cause of action for wrongful termination in violation of the public policies of the State of Utah and of the United States. *See Peterson v. Browning*, 832 P.2d 1280, 1281–82 (Utah 1992). Second, she asserts that the Utah Educator Evaluation Act (EEA), Utah Code Ann. §§ 53A–10–101 to –111 (1994), provides provisional educators with substantive and procedural protections which modify their at-will employment status. Moreover, she urges us to find that the EEA provides her with a private right of action similar to that which may be available under federal law. *See Griffin v. Memmott*, 814 P.2d 601, 602 (Utah App.1991) (discussing whether federal law created private right of action and adopting Supreme Court's test from *Cort v.*

---

1. Apparently, the District has not been entirely consistent in stating its rationale for Broadbent's non-retention. The reason has been alternatively described as insubordination, problems with her "philosophy and attitude," or her "disruptive" style of advocating for the placement of special education students. Broadbent asserts that these inconsistent statements are significant because they show the duplicitous nature of the District, or even indicate the cover-up of a wrongful termination. We disagree. Each of the District's rationales for Broadbent's release amounts to essentially the same thing, i.e., Broadbent's supervisors found her difficult to work with. Such a problem is a legitimate, non-discriminatory reason for termination. Furthermore, as we in-

dicate in this opinion, the District had the right not to renew her contract for any reason or for no reason at all.

2. Broadbent attached the OCR's no-action letter as an addendum to her reply brief. However, we are precluded from considering it as it was never made part of the record. *Chapman v. Chapman*, 728 P.2d 121, 122–23 (Utah 1986).

3. Because of the manner in which Broadbent framed the issues on appeal, we do not consider whether Broadbent's non-retention violated other provisions of state or federal law.

*Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)). The District counters that neither of these theories provides Broadbent with a cause of action, and that, even if they did, either claim would nevertheless be barred by the Utah Governmental Immunity Act. *See* Utah Code Ann. §§ 63–30–1 to –38 (1993 & Supp.1995).

## STANDARD OF REVIEW

 In reviewing the trial court's grant of summary judgment, we view the facts, and all reasonable inferences to be drawn therefrom, in the light most favorable to the losing party, and will affirm only if there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. *Winegar v. Froerer Corp.,* 813 P.2d 104, 107 (Utah 1991). We grant no deference to the trial court's conclusions of law and review them for correctness. *Id.*

## ANALYSIS

### I. Public Policy Exception

Broadbent asserts her termination violated public policy and is thus an exception to the employment at-will doctrine. The Utah Supreme Court has indicated that there is an exception to the general rule of at-will employment, which serves to prevent employers from terminating an employee for a reason which violates a "clear and substantial" public policy. *See Peterson,* 832 P.2d at 1281–82. However, as counsel for Broadbent conceded during oral argument, the Utah Supreme Court's decision in *Peterson,* while recognizing the existence of this cause of action, also forecloses any possibility that it may be invoked by Broadbent. This is due to the simple fact that *Peterson* held that the exception sounds in tort, not contract. *Id.* at 1284.

 While governmental immunity is waived for claims based in contract, *see* Utah Code Ann. § 63–30–5 (1993), there is no waiver of governmental immunity for Broadbent's type of tort claim. *See* Utah Code Ann. §§ 63–30–5 to –10.5 (1993 & Supp.1995) (listing types of claims for which governmental immunity is waived).[4] Because it is undisputed that the District is a governmental entity discharging a governmental function, the District would be immune from suit. *See* Utah Code Ann. § 63–30–3 (1993). Therefore, it is irrelevant whether Broadbent's claim would otherwise be viable as asserting a violation of public policy.[5]

### II. Broadbent's Right of Action Under the EEA

Broadbent asserts that the District cannot refuse to renew her contract without first having complied with procedures mandated by the EEA. *See* Utah Code Ann. §§ 53A–10–101 to –111 (1994). These procedures include written evaluations of provisional educators at least twice a year, *id.* §§ 53A–10–102 to –106, a plan to improve performance when indicated, *id.* § 53A–10–107 and the assignment of a consulting educator, *id.* § 53A–10–108. Broadbent argues that the Board failed to comply with these procedures prior to notifying her of the non-renewal of her contract and that she, therefore, has a private cause of action under the EEA to enforce its provisions. We disagree.

Broadbent's contract is clear and unambiguous. Her contract provides, in relevant part:

*Continuous Employment*

b. New employees in the Cache County School District shall be provisional employees for three years after the date of employment. *During this time they*

---

4. Broadbent attempts to avoid the shield of governmental immunity by asserting that one of her claims for relief was for reinstatement, an equitable remedy, which would not be barred by the Governmental Immunity Act. However, Broadbent raised this issue for the first time in her reply brief and we decline to address it. *See* Utah R.App.P. 24(c); *see also Von Hake v. Thomas,* 759 P.2d 1162, 1169 n. 6 (Utah 1988) (citation omitted).

5. Broadbent urges a reconsideration of *Peterson* in light of the effect of the Governmental Immunity Act. *See Peterson,* 832 P.2d at 1286 (Zimmerman, J., concurring and dissenting) (disagreeing with majority's characterization of cause of action as tort). However, it is beyond the power of this court to overrule *Peterson.*

*shall be without the right of expectation of continued employment.*

. . . .

*Dismissal Procedures*

a. *Non-renewal of Contract*

1. *Provisional Teachers*—A provisional teacher is an employee who has had less than three years of successful teaching in the Cache County School District and *who is hired without the right of expectation of continued employment.* If the District intends to renew a provisional teacher's contract, notification will be made where possible, at least two months before the end of the current contract term (school year).

(emphasis added). The contract indicates, and Broadbent concedes, that she was a provisional educator with a one-year contract; thus, she was not entitled to any reasonable expectation of continuing employment.

Nevertheless, Broadbent argues that the EEA's procedures are mandatory precursors to the non-retention of a provisional educator. We disagree. Broadbent's non-retention occurred due to factors wholly outside the scope of the EEA. Her non-retention was not based upon the sort of performance deficiencies which the EEA is designed to remediate—inadequate teaching performance—but rather upon factors beyond the Act's purview. In this regard, we find the analysis employed in *Schofield v. Richland County Sch. Dist.,* 447 S.E.2d 189 (S.C.1994), to be persuasive. *See also Roberts v. Lincoln County Sch. Dist. No. One,* 676 P.2d 577, 581 (Wyo.1984) (upholding dismissal of teacher due to difficulties coaching sports not on basis of classroom performance).

In *Schofield,* the South Carolina Supreme Court construed a South Carolina statute similar to the EEA. *Schofield,* 447 S.E.2d at 191. The *Schofield* court determined that a provisional educator remediation statute, like the EEA, is designed to provide assistance to educators in remedying only those deficiencies in *scholastic performance* noted *during* their evaluations. *Id.; accord Roberts,* 676 P.2d at 581. In Broadbent's case, there is no indication in the record that she had any deficiencies in her teaching performance. Rather, she was released due to her unwill-ingness to follow the instructions of her superiors. Furthermore, even assuming that a provisional educator received every possible benefit of the EEA and was, in fact, a highly competent educator with no deficiencies and excellent evaluations, the Board would still have the power not to renew that contract. *See Schofield,* 447 S.E.2d at 191; *Leonard v. Converse County Sch. Dist. No. Two,* 788 P.2d 1119, 1121 (Wyo.1990); *Roberts,* 676 P.2d at 581.

■ Thus, while it is questionable that the remediation provisions of the EEA would have aided Broadbent, she nonetheless asserts that they are mandatory and that she should have a right to force the District to comply with them. In support of her argument, Broadbent cites the four-part analysis employed by this court in *Griffin v. Memmott,* 814 P.2d 601, 602 (Utah App.1991) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)), as the test for determining whether the EEA provides her with a private right of action. However, her reasoning is not compelling. *Griffin* involved a private right of action based upon a *federal* statute. *Id.* While there is a considerable body of law involving the creation of private rights of action under federal law, the courts of this state are not generally in the habit of implying a private right of action based upon state law, absent some specific direction from the Legislature. *Milliner v. Elmer Fox & Co.,* 529 P.2d 806, 808 (Utah 1974) (stating where criminal statute did not provide private right of action, matter best left to legislature); *see also J.H. by D.H. v. West Valley City,* 840 P.2d 115, 125 (Utah 1992) (declining to create private right of action to challenge city's failure to follow specific procedure in hiring officers); *Nielson v. Division of Peace Officer Standards & Training,* 851 P.2d 1201, 1204 (Utah App. 1993) (holding private citizen had no right to compel POST to conduct disciplinary hearings).

■ Furthermore, *Griffin* did not hold that the *Cort* factors are *the* definitive test for determining the existence of a private right of action under state law. *Griffin* merely considered the factors used by the

United States Supreme Court for determining the availability of a private right of action under federal law. *Griffin*, 814 P.2d at 602. Since the United States Supreme Court has supremacy on issues of federal law, it is proper that state courts follow its lead in federal matters. However, the application of federal standards to federal law by a state court does not mandate that the state court must apply identical standards when considering state law.

However, even assuming the validity of the *Cort* factors in the arena of state law, we still find that Broadbent has no private right of action under the EEA. The *Cort* factors discussed in *Griffin* for determining whether a statute grants a private right of action are:

> (1) whether the plaintiff is a member of a class for whose *special* benefit the statute was enacted; (2) whether [the Legislature] *intended* to create or deny a private remedy; (3) whether a private remedy would be *consistent* with the Statute's underlying purposes; and (4) the extent to which the cause of action is traditionally relegated to state law.

*Griffin*, 814 P.2d at 602 (citing *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088) (emphasis added).

■■■ None of these factors convinces us that the EEA is meant to provide provisional educators with a private cause of action to enforce its provisions. While Broadbent asserts that the EEA was enacted specifically for the benefit of educators, that does not appear to be true. Rather, the EEA is primarily concerned with improving the overall quality of the educational system. *See* Utah Code Ann. § 53A–10–101 (1994) (stating "[t]he Legislature recognizes that the *quality of public education* can be improved" by providing educator evaluations) (emphasis added); *see also Roberts*, 676 P.2d at 581 (construing statement of purpose similar to section 53A–10–101 and noting regulations were for primary benefit of school district in performing operational and supervisory duties). While educators may be incidental beneficiaries of the statute's provisions, it was not enacted for their primary benefit. *Accord Leonard*, 788 P.2d at 1121 (stating even if rules had secondary purpose relating to retention, they did not create reasonable

expectation of reemployment). The EEA is not meant to create a de facto tenure track for provisional educators by eliminating the Board's ability to refuse to renew their contracts without first following all the procedural requirements of the EEA. *Id.* at 1122; *Roberts*, 676 P.2d at 581–82.

More significantly, there is no indication in the EEA that the Legislature intended to create a private remedy. Like Broadbent's employment contract, the EEA makes a distinction between "career educators," who are entitled to rely on continuing employment, and "provisional educators," who have not yet reached "career" status. Utah Code Ann. §§ 53A–10–102(1), (4) (1994). There is no indication in the EEA that it was meant, in any way, to modify a school district's termination procedures with respect to provisional educators, nor to provide a private cause of action.

Similarly, the Utah Orderly School Termination Procedures Act, Utah Code Ann. §§ 53A–8–101 to –107 (1994 & Supp.1995), has never granted provisional educators any significant protections beyond those found in their employment contracts. *See Abbott v. Board of Educ.*, 558 P.2d 1307, 1308 (Utah 1976) (finding teacher's only statutory right was to timely notice, decided under former law). In fact, the Act was amended in 1994 and now addresses even more clearly and specifically the District's relationship with provisional educators. *See* Utah Code Ann. §§ 53A–8–102 to –107 (Supp.1995).

While the 1994 amendments became effective after Broadbent's non-retention, they are instructive as to the Legislature's intent. Significantly, these amendments grant provisional educators no new rights but merely codify what had previously been true; provisional educators are only entitled to notice and hearings. Utah Code Ann. § 53A–8–104 (Supp.1995). Therefore, even if the amendments had been in effect when Broadbent was notified of her non-renewal, the only rights which they would have granted her would have been the notice and hearing which she did, in fact, receive. *See id.* Given that the Legislature has demonstrated its awareness of the at-will status of provisional educators, and has codified the procedures

for provisional educator termination, we would expect the EEA to be equally explicit if it were intended to act as a substantive or procedural modification of provisional educators' at-will employment status. There is no such indication in the EEA.

Finally, we do not believe that allowing a private remedy would be consistent with the underlying purpose of the EEA, nor would it be harmonious with the Utah Orderly School Termination Procedures Act.[6] Both of these statutes incorporate the distinction between career and provisional educators found in the District's policies and procedures. To allow Broadbent a private right of action would be to override, by judicial fiat, a system which the Legislature has at least tacitly, if not expressly, sanctioned. Therefore, we hold the EEA does not provide Broadbent with a private right of action to enforce its provisions. Accordingly, we conclude that the EEA was not violated by the District's decision not to renew Broadbent's contract, and therefore, the District acted lawfully in deciding not to renew Broadbent's contract for any reason or for no reason at all.

**6.** We note that it is proper to read the EEA and the Utah Orderly School Termination Procedures Act as in pari materia. Our supreme court has stated:

> Statutes are considered to be in pari materia and thus must be construed together when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. If it is natural or

## CONCLUSION

We do not reach the question of whether or not Broadbent might have had a cause of action under the public policy exception to the employment at-will doctrine, because even assuming she had a right to proceed under this theory, her claim, sounding in tort, would be barred by the Utah Governmental Immunity Act. Nor is Broadbent entitled to assert the Educator Evaluation Act as a limitation upon the District's ability not to renew her contract, because that Act does not alter her provisional employment status, nor does it create a private right of action to enforce its procedures. Accordingly, we affirm the trial court's dismissal of Broadbent's action.

ORME, P.J., and DAVIS, Associate Presiding Judge, concur.

> reasonable to think that the understanding of the legislature or of persons affected by the statute would be influenced by another statute, then those statutes should be construed to be in pari materia, construed with reference to one another and harmonized if possible.

*Utah County v. Orem City*, 699 P.2d 707, 709 (Utah 1985) (footnotes omitted).