Opinion
 

 SPARKS, Acting P. J.
 

 In this action involving conflicting mining claims to real property in Sierra County, the trial court refused to apply the recordation provisions of the Federal Land Policy and Management Act of 1976 (43 U.S.C. § 1701 et seq., especially § 1744 (FLPMA)), and entered a judgment quieting title to the property known as the “Good Faith” claim in cross-complainants Jereld R. and Danette Miller despite their failure to comply with those provisions.
 
 [1]
 
 We find the FLPMA recordation provisions to be self-executing and that by virtue of Miller’s failure to comply with those provisions he forfeited his claim. Accordingly, we shall reverse the judgment.
 

 Factual and Mining Law Background
 

 The facts relevant to the issues on appeal are not in dispute and may be best understood following a brief exposition of mining law. We are concerned here with public land under the ownership of the United States.
 

 
 *901
 
 The power over the disposition of such land and the minerals contained therein is in Congress and not in the states.
 
 (McLemore
 
 v.
 
 Express Oil Co.
 
 (1910) 158 Cal. 559, 562 [112 P. 59];
 
 Moore
 
 v.
 
 Smaw
 
 (1861) 17 Cal. 199, 218-219.) Congress has provided that, unless otherwise withdrawn, all valuable mineral deposits in lands belonging to the United States are free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become citizens. (30 U.S.C. § 22.) Certain requirements for the establishment and maintenance of mining claims have been set forth by Congress (e.g., 30 U.S.C.) but federal legislation has traditionally left much regulation to the states and to local customs or rules of the miners of a mining district (30 U.S.C. § 22).
 

 There are two types of mining claims which may be made, “lode” claims and “placer” claims. “Lode claims embrace one or more continuous veins, lodes, or ledges of mineral lying within well-defined seams or fissures in the surrounding rock, within boundaries clearly separating it from the neighboring rock, often deep within the bowels of the earth.” (53A Am.Jur.2d, Mines and Minerals, § 21, p. 273, fns. omitted.) “A placer claim is one where the valuable mineral is not found in veins, lodes, or ledges within the rock, but in a loose condition in the softer materials that cover the surface of the earth."
 
 (Ibid.,
 
 fns. omitted.) A lode claim is limited by reference to its course, while a placer claim may not exceed 20 acres for each individual claimant. (30 U.S.C. §§ 23, 35.)
 

 In mining terms, “location” refers to the acts required to stake a claim to mineral bearing property. It requires that the boundaries of the claim be marked upon the ground, that the locator take possession and work on the ground, that the claim be recorded, and the performance of whatever else is mandated by the acts of Congress and by local laws and regulations.
 
 (Creede & C. C. M. & M. Co.
 
 v.
 
 Uinta T. M. & T. Co.
 
 (1904) 196 U.S. 337, 346 [25 S.Ct. 266, 270, 49 L.Ed. 501, 507].) Discovery of valuable minerals on the claim is necessary to perfect the claim, but discovery need not precede the other acts of location.
 
 (Ibid.)
 
 After a claim is perfected, a miner must perform at least $100 worth of labor or improvements tending to develop the property each year or the claim will be open to other prospectors until such time as work is resumed. (30 U.S.C. § 28; Pub. Resources Code, § 3912.) The period for performance of annual development work runs from September 1st to September 1st each year commencing with the September 1st that follows the date of initial location of a claim.
 
 (Ibid.)
 

 When a miner has perfected a location of a mining claim, and while he or she continues to perform the required annual development work on the
 
 *902
 
 claim, the miner is entitled to the exclusive right of possession and enjoyment of all the surface included within the borders of the location for so long as he or she complies with all of the laws of the United States and with the state, territorial or local regulations not in conflict with the laws of the United States. (30 U.S.C. § 26.)
 
 [2]
 
 An attempted location upon lands which are already covered by a valid and existing location of another is void.
 
 (Denman
 
 v.
 
 Smith
 
 (1939) 14 Cal.2d 752, 761 [97 P.2d 451].) Where, however, the location is abandoned by the locator or is forfeited for the failure to comply with legal prerequisites for locating and maintaining a claim, then any other person may relocate the claim in the same manner as is required of an original locator. (Pub. Resources Code, § 3903.)
 

 State law provides that within 90 days of posting his or her notice of location upon a claim, the locator shall record, in the office of the county recorder of the county in which the claim is situated, a true copy of the notice together with a statement by the locator containing certain information. (Pub. Resources Code, §3911.) Recordation of the notice serves as constructive notice to other prospectors, but a failure to record with the county recorder does not work a forfeiture and persons with actual knowledge of the claim cannot take advantage of the failure to record.
 
 (MacDonald
 
 v.
 
 Midland Mining Co.
 
 (1956) 139 Cal.App.2d 304, 311-312 [293 P.2d 911].) State law also requires the recordation of an affidavit of the performance of labor and improvements within 30 days of the time limited by law for the performance of such work. (Pub. Resources Code, § 3913, subd. (a).) Timely recordation of the affidavit serves as prima facie proof of the performance of the work stated in the affidavit. (Pub. Resources Code, § 3913, subd. (b).) A failure to record the affidavit timely creates a prima facie presumption of the act and intent of the owner to abandon the claim at the end of the assessment year in which the work should have been done and imposes upon the owner the burden of proof of showing that the work was performed in any contest, suit or proceeding touching the title to the claim. (Pub. Resources Code, § 3913, subd. (c).) But, under state law, the failure to record the affidavit does not work a forfeiture of the claim if the owner proves that he or she in fact performed the requisite annual work.
 
 (Pepperdine
 
 v.
 
 Keys
 
 (1961) 198 Cal.App.2d 25, 32 [17 Cal.Rptr. 709];
 
 Hazzard
 
 v.
 
 Johnson
 
 (1919) 45 Cal.App. 19, 27 [187 P. 121].)
 

 Although, as we have noted power over the disposition of federal land is in Congress, until 1976, the federal government maintained a laissez-faire
 
 *903
 
 approach that left prospectors virtually unconstrained by the fetters of federal control.
 
 (United States
 
 v.
 
 Locke, supra,
 
 471 U.S. at p. 86 [105 S.Ct. at p. 1788, 85 L.Ed.2d at pp. 70-71].) By the mid-20th century, this approach had created virtual chaos with respect to public lands.
 
 (Ibid.)
 
 In 1976, after more than a decade of study, Congress enacted the FLPMA.
 
 (Id.
 
 at p. 87 [105 S.Ct. at pp. 1788-1789, 85 L.Ed.2d at p. 71]; 43 U.S.C. § 1701 et seq.)
 

 We are here concerned with section 314 of the FLPMA (43 U.S.C. § 1744), which we have set out in full as an appendix to this opinion. That section establishes a federal recording system for unpatented mining claims. Pursuant to that section, the owner of an unpatented mining claim is required to file with the Bureau of Land Management (BLM), within 90 days of locating the claim, a copy of the official notice of the location or certificate of location. (43 U.S.C. § 1744(b).)
 
 [3]
 
 Thereafter, commencing in the year following the calendar year in which the claim was located, the owner is required to file with state officials and with the BLM, prior to December 31, a notice of intention to hold the claim, an affidavit of assessment work performed on the claim, or a detailed reporting form. (43 U.S.C. § 1744(a).) Section 1744(c) provides that a failure to file the required instruments “shall be deemed conclusively to constitute an abandonment of the mining claim ... by the owner. . . .” In
 
 United States
 
 v.
 
 Locke, supra,
 
 471 U.S. at pages 97 through 102 [105 S.Ct. at pp. 1794-1796, 85 L.Ed.2d at pp. 77-81], the high court held that full and timely compliance with these provisions is required for preservation of a mining claim and that failure to comply works a forfeiture of the claim. Thus, intent to abandon is irrelevant and the claim is lost.
 

 With that background we may now recite the relevant facts. Around 1985 Miller began prospecting for gold in the area of Canyon Creek in Sierra County, in the vicinity of a placer mining claim owned by Newell Rodewald. In 1990 Rodewald decided to abandon his claim, and neither he nor his claim is involved in this dispute. Miller desired to continue his activities in the area and to this end, in August 1991, he made a location. He then filed a notice of his placer mining claim location with the county recorder and with the BLM. Miller received notice that his claim did not describe contiguous land and included more than the 40 acres he and Danette could claim. In June 1992, Miller filed another notice with the county that he termed an amended notice of claim. He subsequently filed the amended
 
 *904
 
 notice with the BLM. The amended claim continued to describe more acreage than was permissible.
 

 Miller did not file an affidavit of assessment work for the 1991-1992 assessment year with the county and did not file any of the required annual documentation with the BLM for 1992. For the 1992-1993 assessment year, Miller filed an affidavit with the county after the time for doing so had expired, and did not file any documentation with the BLM for 1993.
 

 In June 1994, after plaintiff James Crummett had made his location and filed his claim, Miller filed another amendment to his claim.
 
 [4]
 
 Thereafter, for the 1993-1994 assessment year, Miller filed his affidavit of annual assessment work with the county and with the BLM.
 

 Crummett prospected in the Canyon Creek area after researching BLM records for open public land and finding a number of claims that appeared abandoned by the failure to file appropriate claim documents. In March 1994, Crummett made a location on Canyon Creek and subsequently filed the appropriate documents with the county and the BLM. Crummett’s claim includes land claimed by Miller, which led to this litigation.
 
 [5]
 
 Crummett filed suit against Miller seeking to quiet title to his claim and other relief. Miller filed a cross-complaint seeking a determination that he was the sole owner of the Good Faith mining claim and for other relief.
 

 The trial court entered judgment quieting title in Miller to a claim of 24.1 acres as represented by the last amendment to his claim. It then entered judgment in Crummett’s favor quieting title to the portions of his claim that are outside the boundaries of the 24.1 acres of Miller’s claim. This appeal by Crummett followed.
 

 Discussion
 

 Of the various issues considered by the trial court, only one is at issue here, the effect of Miller’s admitted failure to file appropriate instruments in 1992 and 1993, as required by the recordation provisions of the FLPMA. The FLPMA provides that such a failure “shall be deemed conclusively to constitute an abandonment of the mining claim” and the United
 
 *905
 
 States Supreme Court has held that Congress intended by that provision to cause a forfeiture of all claims for which the filing requirements were not met. (43 U.S.C. § 1744(c);
 
 United States
 
 v.
 
 Locke, supra,
 
 471 U.S. at p. 98 [105 S.Ct. at pp. 1794-1795, 85 L.Ed.2d at p. 78]; see also
 
 Western Min. Council
 
 v.
 
 Watt
 
 (9th Cir. 1981) 643 F.2d 618, 628.) However, the trial court, relying on a decision of the Utah Court of Appeals, concluded that the FLPMA did not create a right of action between private claimants, and that Crummett therefore lacked standing to raise an issue concerning Miller’s failure to comply with the act.
 

 The source of the trial court’s reasoning was the decision in
 
 Griffin
 
 v.
 
 Memmott
 
 (Utah Ct. App. 1991) 814 P.2d 601. There, after decades of unsuccessful legal attacks on the plaintiffs’ mining claims, the defendants contended that the plaintiffs had lost their claims by failing to file notice of the claims with the BLM. The Utah Court of Appeals concluded that a state court lacks subject matter jurisdiction over such contentions. (814 P.2d at p. 604.) The court reached this result after noting that whether a federal statute creates a private right of action is a question of statutory interpretation to be resolved by consideration of the factors identified in
 
 Cort
 
 v.
 
 Ash
 
 (1975) 422 U.S. 66, 78 [95 S.Ct. 2080, 2087-2088, 45 L.Ed.2d 26, 36]. Those factors are: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted, (2) whether there is any indication of congressional intent to create or deny a civil remedy, (3) whether a private remedy would be consistent with the statute’s underlying purpose, and (4) whether the asserted cause of action is one traditionally left to state law in an area basically the concern of the states. Based upon its view of the matter, the Utah appellate court concluded that the recording provisions of the FLPMA apply only between the BLM and mining claimants and that other private parties cannot assert them.
 
 (Griffin
 
 v.
 
 Memmott, supra,
 
 814 P.2d at p. 604.)
 

 In our view the Utah court approached the issue from a tangent that is both irrelevant and anomalous in the context of the recordation provisions of the FLPMA. We are concerned here with the effect of a recording law rather than with a civil litigant attempting to state a cause of action based upon a violation of a federal criminal statute, such as was the issue in
 
 Cort
 
 v.
 
 Ash, supra,
 
 422 U.S. 66 [45 L.Ed.2d 26]. The factors identified in the
 
 Cort
 
 v.
 
 Ash
 
 decision have relevance in determining whether the violation of a federal criminal law, in and of itself, gives rise to a civil cause of action in a private person, when the federal statute is silent on the issue. That question is a matter of statutory interpretation with the primary goal being to determine the intent of Congress.
 
 (Cort
 
 v.
 
 Ash, supra,
 
 422 U.S. at pp. 78-80 [95 S.Ct. at pp. 2087-2089, 45 L.Ed.2d at pp. 36-37].) But consideration of the
 
 Cort
 
 v.
 
 Ash
 
 factors is unnecessary where, as here, no one is trying to state a civil
 
 *906
 
 cause of action for violation of a federal statute,
 
 [6]
 
 and the statute at issue expressly provides the effect of a failure to comply with its requisites.
 

 The statute at issue here is a recording law. Recording laws are entirely creatures of statute and not of common law, common right or abstract justice.
 
 (Adler
 
 v.
 
 Sargent
 
 (1895) 109 Cal. 42, 48 [41 P. 799]; 55 Cal.Jur.3d, Records and Recording Laws, §20, p. 131; 66 Am.Jur.2d, Records and Recording Laws, § 47, p. 369.) There are two aspects of recording laws that are significant here. First, by their nature, recording laws are self-operative. (14 Powell on Real Property (1996) § 82.01 [3], p. 82-14.) Indeed, in
 
 United States
 
 v.
 
 Locke, supra,
 
 471 U.S. at page 100 [105 S.Ct. at pp. 1795-1796, 85 L.Ed.2d at p. 79], the court described the FLPMA recording law as “a self-executing recording system” and concluded that the congressional intent concerning forfeiture was deliberate. Second, the effect of recording or failing to record pursuant to a recording act must be found in the statute itself and not elsewhere.
 
 (Adler
 
 v.
 
 Sargent, supra,
 
 109 Cal. at p. 48.) Accordingly, we must look to the language of the statute for its effect and will not proceed through implication.
 

 The recording statute of the FLPMA specifies the effect of a failure to record. Under its terms, such a failure “shall be deemed conclusively to constitute an abandonment of the mining claim.” (43 U.S.C. § 1744(c).) In
 
 United States
 
 v.
 
 Locke, supra,
 
 471 U.S. at pages 98 through 100 [105 S.Ct. at pp. 1794-1796, 85 L.Ed.2d at pp. 78-80], the court held that this provision establishes a self-executing recording system in which a failure to record works a forfeiture of a claim, and, accordingly, “[s]pecific evidence of intent to abandon is simply made irrelevant by [the FLPMA]; the failure to file on time, in and of itself, causes a claim to be lost.” In light of that construction of the statutory scheme, the court addressed several subsidiary questions and concluded that full, timely compliance is required and no assertion of “substantial compliance” can excuse a failure of timely compliance
 
 (id.
 
 at pp. 100-102 [105 S.Ct. at pp. 1795-1796, 85 L.Ed.2d at pp. 80-81]; forfeiture for failure to comply is a reasonable, if severe, means of furthering congressional goals and does not result in a “taking” of private property
 
 (id.
 
 at pp. 106-107 [105 S.Ct. at pp. 1798-1799, 85 L.Ed.2d at pp. 83-84]; and the
 
 *907
 
 FLPMA provides miners with all the process that is their constitutional due, that is, individual notice and an opportunity for a hearing are not required for a self-executing forfeiture to occur
 
 (id.
 
 at pp. 108-110 [105 S.Ct. at pp. 1799-1801, 85 L.Ed.2d at pp. 84-86]).
 

 We have considered the language of the recordation provisions of the FLPMA, the other provisions of the FLPMA, and the decision in
 
 United States
 
 v.
 
 Locke, supra,
 
 471 U.S. 84, and find nothing that would support the kind of two-tiered mining rights system that the Utah decision in
 
 Griffin
 
 v.
 
 Memmott, supra,
 
 814 P.2d 601, and the judgment in this case would establish. The clear and unambiguous terms of the federal statute provide for a complete forfeiture of interests upon a failure of compliance and we are not free to disregard such clear statutory language. The conclusion that a failure to comply with the federal recording law causes a forfeiture of interests as to the federal government but yet preserves those interests against other persons finds no support in the statutory language, would thwart the congressional purpose of ridding federal lands of stale mining claims, and would add to rather than alleviate the virtual chaos that had resulted from a lack of a federal recording act prior to 1976.
 

 The result urged by Miller would also conflict with another provision of federal mining law. With respect to mineral lands, federal law provides “[e]xcept as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase . . . .” (30 U.S.C. §22.) By this provision Congress has declared that, unless withdrawn or subject to valid existing mining claims, all mineral land owned by the United States is free and open to exploration, occupation and purchase. To conclude that a forfeiture effected by a failure to comply with the FLPMA recordation provisions applies only as to the United States would compel the anomalous result that the United States would own the land free and clear of any existing mining claim but that the land was, in contravention of federal statute, not free and open to exploration, occupation, and purchase.
 

 It must be remembered that we are here concerned with federal land and that the power of disposition over such land is in Congress rather than the states.
 
 (McLemore
 
 v.
 
 Express Oil Co., supra,
 
 158 Cal. at p. 562;
 
 Moore
 
 v.
 
 Smaw, supra,
 
 17 Cal. at pp. 218-219.) Any rights Miller had in the land arose pursuant to federal law and federal law imposed a filing requirement upon him as a condition of preserving his rights. It is anomalous for Miller to come into state court and assert federal law as the source of his rights and yet argue that the state court lacks jurisdiction to apply federal law to him.
 

 
 *908
 
 Crummett’s attempt to resolve the right to possession of the property in question in this state court litigation is consistent with well-established precedent. In
 
 Gruwell
 
 v.
 
 Rocca
 
 (1903) 141 Cal. 417, 419 and 420 [74 P. 1028], the court held that, while the right to possession as between conflicting locators will be determined under federal law, a state court is an appropriate forum for resolving those claims. (See also
 
 Watterson
 
 v.
 
 Cruse
 
 (1918) 179 Cal. 379, 381 [176 P. 870].) In
 
 Goldberg
 
 v.
 
 Bruschi
 
 (1905) 146 Cal. 708, 711 and 712 [81 P. 23], the court outlined the procedure for such litigation. Public land is presumed to be unoccupied and therefore, initially, it is sufficient for the plaintiff to make a prima facie showing of a location. The defendant may then make a showing of a prior location. If the defendant makes such a showing, the plaintiff may then attempt to show that the prior location was abandoned or forfeited. This litigation was perfectly consistent with this approach, and we reject the claim that the court lacked jurisdiction to consider the contention that Miller’s location was forfeited by virtue of his failure to comply with the FLPMA recording law.
 
 [7]
 

 It is clear that Miller forfeited his claim by failing to comply with the recordation provision of the FLPMA. Miller initially filed his claim in 1991 and he filed an amendment in 1992. He did not file with the BLM appropriate documents to preserve the claim in 1992 or 1993. Miller claimed he thought that since he filed an amendment in 1992 he would not have to file further documentation that year. However, even if we assume that is correct, or treat the 1992 amendment as a new claim, the failure to file in 1993 forfeited the claim. By the express terms of the FLPMA, Miller’s claim was forfeited at the end of 1993, and thus the land was open to exploration, occupation, and purchase when Crummett staked his claim in 1994. Accordingly, the judgment must be reversed to the extent it quiets title in Miller.
 

 Disposition
 

 The judgment is reversed and the cause remanded to the trial court with directions to enter a new and different judgment in favor of Crummett in a fashion consistent with the views expressed in this opinion. Crummett shall recover his costs on appeal.
 

 Sims, J., and Scotland, J., concurred.
 

 [1]
 

 Although Danette Miller joined her husband in making the Good Faith claim, it appears that the activities performed with respect to the claim were performed by Jereld Miller. Henceforth references to Miller in the singular will refer to the actions of Jereld Miller, but it should be understood that he performed these actions on behalf of himself and his wife. Likewise, the competing claim was filed by James Crummett on behalf of himself and others, but it appears that the relevant activities were performed by Crummett. In describing these activities we will refer to Crummett with the understanding that he was acting on behalf of himself and other parties.
 

 [2]
 

 A
 
 person who has perfected a mining claim may, upon fulfilling certain statutory conditions and paying a nominal fee, patent the land and minerals therein.
 
 (United States
 
 v.
 
 Locke
 
 (1985) 471 U.S. 84, 86 [105 S.Ct. 1785,1788,85 L.Ed.2d 64, 71].) Upon issuance of a patent, title to the land and minerals, in fee, passes to the purchaser and the rules applicable to unpatented claims, such as the annual performance of improvement work, no longer apply. However, patenting is not required and an unpatented mining claim is a fully recognized possessory interest.
 
 (Ibid.)
 
 No effort was made to patent any of the claims at issue here.
 

 [3]
 

 The FLPMA became effective in October 1976. With respect to preexisting claims the recording requirements of the act provided a three-year period during which all claimants were required to file a notice or certificate of location. (43 U.S.C. § 1744(b).) The claims involved in this litigation arose long after the enactment of the FLPMA and are subject to its provisions for new claims.
 

 [4]
 

 Miller’s claim continued to exceed the 40-acre maximum allowed to 2 persons until a few weeks before trial when he filed yet another amendment that identified 24.1 acres as being subject to his claim. The trial court quieted title to the 24.1 acres claimed in Miller’s latest amendment.
 

 [5]
 

 Crummett’s claim also included land under a claim of a person or persons named Sturgeon, and Crummett’s complaint included three persons who were supposed claimants under that claim. However, the Sturgeon interests defaulted and are not involved in this appeal.
 

 [6]
 

 To state a cause of action for violation of a federal statute within the meaning of the
 
 Cort
 
 v.
 
 Ash
 
 decision, a plaintiff would simply allege the defendant’s failure to comply with the law and ask for money damages based solely upon that failure.
 
 (Cort
 
 v.
 
 Ash, supra,
 
 422 U.S. at pp. 77-78 [95 S.Ct. at pp. 2087-2088, 45 L.Ed.2d at p. 36].) Such a civil cause of action may or may not be implicit in a federal statute prohibiting or compelling certain action, but regardless whether a federal statute gives rise to an implied cause of action, traditional civil remedies are not precluded simply because they may implicate the federal statute.
 
 (Ibid.)
 
 While this litigation implicates the recording provisions of the FLPMA, it is not an attempt to state a civil cause of action for violation of a federal statute within the meaning of
 
 Cort
 
 v.
 
 Ash.
 

 [7]
 

 We note that while the action was denominated an action to quiet title, all that is at issue is the right to possession. The legal title to the property is and will remain in the United States and the trial court lacks jurisdiction over the legal title as such.
 
 (Livermore
 
 v.
 
 Beal
 
 (1937) 18 Cal.App.2d 535, 545 [64 P.2d 987].) To obtain title to the property a claimant must proceed with a patent application and patent proceedings are under the exclusive jurisdiction of the BLM. (30 U.S.C. §§ 29-30.) However, in the event an adverse claim is filed in a patent proceeding, the proceedings are stayed until the right to possession can be resolved by a court of competent jurisdiction. (30 U.S.C. § 30.) Thus, even in the event of a patent application the BLM must defer to judicial resolution of the right to possession.