**Ira K. HEARN, Jr., Plaintiff,**

v.

**UTAH LIQUOR CONTROL COM-
MISSION, Defendant.**

**No. 14269.**

Supreme Court of Utah.

March 25, 1976.

D. Ray Owen, Jr., Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., William W. Barrett, Robert M. Taylor, Asst. Attys. Gen., Salt Lake City, for defendant.

MAUGHAN, Justice:

By order, the Utah Liquor Control Commission, hereafter Commission, discharged its director. That order is here on review, for the purpose of determining its lawfulness. Our review does not extend further

than to determine whether the Commission regularly pursued its authority, and whether, by such order, the Commission violated any constitutional right of the petitioner. We affirm the order of the Commission.

■ The statute pursuant to which this review is undertaken provides that findings and conclusions on questions of fact, including ultimate facts and conclusions on reasonableness and discretion are not subject to review.[1] Such findings and conclusions will only be overturned if they are unreasonable to a point where they become arbitrary or capricious; and thus are invalid as a matter of law. The findings and conclusions here are not subject to those infirmities. All statutory references are to U.C.A.1953, as amended.

Section 32–1–5.5, in part provides:

(1) The commission by the unanimous concurrence of all commissioners shall employ with the approval of the governor a director of the liquor control commission. The director shall be the executive and administrative head of the liquor control commission and shall carry out the policy of the commission. . . .

(2) The director is accountable to the liquor control commission for the faithful performance of his duties and for carrying out the commission's policies. . . .

(3) . . . He may only be removed from office for cause after a public hearing by a majority vote of the commission.

The remainder of the section under consideration provides for certain duties to be performed by the director, all of which are subject to the powers and responsibilities delegated to the Commission; some of which require presentation of recommendations or reports to the Commission, as specifically set forth or as may be requested by the Commission. The director is also constrained to "do all advisable and necessary to keep the Commission fully informed of all operations and administrative activities under his supervision and direction and assist the Commission in the proper discharge of its duties and responsibilities."

The succeeding section[2] impresses on the Commission "the general control, management and supervision of all business activities and matters pertaining to the control of alcoholic beverages and liquors in the state of Utah."

From the foregoing it can be seen that the Commission employs the director and fixes his salary; that he is directly accountable to the Commission for carrying out the Commission's policies; that whatever he does is subject to the powers and responsibilities delegated to the Commission; and that he is to keep the Commission informed and assist in the discharge of its duties and responsibilities. Pursuant to the procedure set forth in subsection (3) a director may be discharged for cause.

On the 14th day of August, 1975, the director was called to the office of the Commission, and given a written notice of a hearing to be held August 22, 1975, which in addition said:

It is the opinion of the Commission that difficulties have arisen over the last six months between the director of the Utah Liquor Control Commission and the Commission members. It is the Commission's opinion that these difficulties prevent us from working amicably and cohesively with you as director of the Utah Liquor Control Commission.

Because of this, we feel that the Commission's business is not being carried out in a cooperative manner nor with a singleness of purpose.

Five days later in prompt response to an August 19 letter from petitioner's counsel, petitioner explained the "difficulties":

. . . a general deterioration of communication and direction between the

---

1. 32–1–32.6, U.C.A.1953.

2. 32–1–6, U.C.A.1953.

Commission and director which leaves the Commission with no confidence in the director.

Pursuant to statute, a public hearing was held on the 22d of August, 1975. It was conducted by Mr. Robert Thurman, a person not a member of the Commission. The director testified, as did six other people produced on his behalf, and various documents were presented by him. One witness testified on behalf of the Commission. There then appeared thirteen different witnesses, who wished to lay their testimony before the Commission. The proceedings were transcribed. The Commission then took the matter under advisement.

On the 3d of September, 1975, another public meeting was convened, present at which were the members of the Commission, the director, his counsel, members of the public, and representatives of the press.

At this meeting Commissioner Hulbert advised those assembled that he had taken no part in the review of the record, nor would he be a part of the decision process. Commissioners Corkey and Durbano thereupon stated into the record their reasons for discharging the director; both of them having voted to do so.

The two principal cases relied on by appellant are *People v. McAllister*[3] and *Taylor v. Lee*.[4] Each of these cases is distinguishable from the one at hand. In McAllister the mayor of Salt Lake City summarily removed an officer who had been appointed to a definite term. The charter provision provided that for removal a two-thirds vote of the council was necessary. The council voted for removal subsequently, but the court held the mayor did not have the power of removal, and the council had exercised its power without preferring charges and affording an opportunity to be heard. In that case there was a procedure for removal, which was not followed. The procedure provided for a notice, a hearing, and an opportunity for the person to be heard in his own defense. In *Taylor*, the court was confronted with a situation concerning a person who had been appointed to fulfill a state office for a definite term of six years—an office serving the public directly, and responsible to the public. There was no statutory procedure provided whereby the officer was to have notice, or whereby he could appear before some body or commission to advance his defense. In that situation the court set aside the removal, and provided a procedure to be followed.

In the instant matter the incidents of the office are distinctly different from *Taylor*. Here we consider a situation concerning a person who was appointed to a position with no definite tenure—a position serving the Commission directly, and directly responsible to the Commission. He serves just a cut above serving at the pleasure of the Commission. He was not summarily removed. A statutory procedure is provided and he was removed pursuant to it.

■ The Commission has the power to remove for cause, after a public hearing, (implicit in which is notice and an opportunity to be heard) and after a vote by majority of the Commission for removal. Following the foregoing procedure, a decision of the Commission is conclusive, if such is not arbitrary or capricious.[5]

■ A review of the record discloses no arbitrary or capricious actions on the part of the Commission. It does disclose an irreconcilable conflict between the Commission and the director. The Commission made findings and conclusions which are supported by evidence; and which point out the irreconcilable differences existing between the director and the Commission. The director's own testimony illuminates the wide divergence his activities took, from the policies and internal procedures of the Commission. It is clear that such

3.  10 Utah 357, 37 P. 578 (1894).

4.  119 Utah 302, 226 P.2d 531 (1951).

5.  Section 32–1–32.6, U.C.A.1953.

divergence rendered impossible an efficient, smooth-running agency. Such is sufficient cause for removal.

No aspersions are cast on the director's business or executive ability. What the evidence does show is that the director had one idea as to how to manage the affairs of the Liquor Control Commission, and the commissioners had another. It is, after all, the statutory duty of the Liquor Control Commission to determine the policy, and to manage the affairs in that area of government.

The claim is made that no cross-examination of adverse witnesses was permitted. Such claim is without merit. The Commission denominated the hearing as a nonadversary hearing, and chose not to cross-examine either the director, his witnesses, or the thirteen others who testified. The sole witness for the Commission was cross-examined by the director's counsel. We find no merit to the claim the director was denied freedom of speech. What the director was entitled to was due notice of the inquiry, together with an opportunity to be heard. This the director had.

One final observation needs making. The Attorney General represented both parties to this controversy, at the public hearing. The Chief Deputy represented the director, and an Assistant Attorney General represented the Commission.

Such was ill-advised, and is improper. We do not say the Commission was not well represented—it was.

However, our statute [6] defining the duties of the Attorney General provides:

(1) To attend the Supreme Court of this state, and all courts of the United States, and prosecute or defend all causes to which the state or any officer, board or commission thereof in an official capacity is a party; . . .

The director was not a state officer acting in an official capacity, when, as an employee of the Commission he appeared in his own defense in opposition to his removal. It was required that the Attorney General appear for the Commission, for it was a state commission performing in an official capacity.

ELLETT, CROCKETT and TUCKETT, JJ., concur.

HENRIOD, Chief Justice:

I do not participate save to observe that sua sponte the main opinion poses a point about some kind of alleged "ill-advised," "improper" procedure on the part of the Utah Attorney General,—a point which no one seems to have urged, and which is no business of this court. This writer cannot interpret the gratuity other than to view it as some kind of political "ill-advised," and "improper" implication.

6. Section 67–5–1, U.C.A.1953.