Rosemary ABBOTT, Plaintiff
and Appellant,

v.

BOARD OF EDUCATION OF the NEBO
SCHOOL DISTRICT, Defendant
and Respondent.

No. 14409.

Supreme Court of Utah.

Dec. 14, 1976.

A. M. Ferro, Michael T. McCoy, Salt Lake City, for plaintiff and appellant.

Robert J. Sumsion, Provo, for defendant and respondent.

ELLETT, Justice:

This appeal involves an interpretation of the Utah Orderly School Termination Procedures Act, 53–51–1 et seq., Utah Code Annotated 1953 (enacted 1973), hereafter referred to as the Act; together with a document entitled "An Agreement between the Board of Education of the Nebo School District and the Nebo Education Association," hereafter called the Agreement. All statutory references are to U.C.A.1953.

Plaintiff was employed as a fifth-grade teacher for the school years of 1973–74 and 1974–75. On March 27, 1975, she was notified by letter that she would not be offered a teaching contract for the coming school year. She requested a hearing before the Board of Education, which was granted. At the hearing the Board declined to state any reason for refusal to renew her contract; however, it did make its files and record in her case available to her, but she refused to look at them. The Board further refused her request to summon and examine at the hearing plaintiff's immediate supervisor, Mr. Stansfield, the principal of the school.

A trial to the court produced a judgment holding the Act not applicable to plaintiff's fact situation and dismissing plaintiff's complaint. We affirm that judgment.

The plaintiff claims to have rights which appertain to career teachers only; that is, rights which belong to a teacher who has taught for at least three years in the district. The plaintiff had taught only one year and was in her second year under a one-year contract when she was notified that she would not be rehired for the ensuing year.

The contract between the parties entitled plaintiff to a hearing on claims based upon an event or condition affecting the interpretation, meaning, or application of the provisions of the contract, but specifically excluded any and all claims not so based.

The contract made no provision that a non-career teacher (which was appellant's status) be given any reason for not being reemployed for another year.

Her claim of being deprived of property under the Fourteenth Amendment to the U. S. Constitution is not well taken—even assuming that amendment was legally adopted.[1]

The case of *Board of Regents v. Roth*[2] held that a nontenured teacher was not entitled to a hearing before being refused a contract for the succeeding year unless it be shown that the teacher was deprived of life, liberty, or property protected by the amendment. Roth was given no reasons for not being rehired for the succeeding year. The Supreme Court held that since Roth had only a one-year contract, he had no "property interest" which was protected by the due process clause of the Fourteenth Amendment.[3]

In the recent case of *LaBorde v. Franklin Parish School Board*,[4] the teacher claimed that not only had the assistant superintendent told her that he planned to recommend her for tenure, but that the school board had rarely failed to renew the contract of a teacher who had taught for three years. The Court held there had been no violation of her procedural due process rights and stated that "An expectancy of re-employment, as that term is used in both *Roth* and *Sindermann*, connotes more than a personal feeling on the part of the teacher. The mere fact that the school board may not have exercised its prerogative to terminate other teachers at the end of their third teaching year does not negate their right under Louisiana law to follow that practice."[5]

In the instant matter, the plaintiff had a contract which specifically provided that she had a contract to teach for one year only. The rules of the school district provided that she would have tenure status only *after* she had taught three years.

The plaintiff argues in her brief that practices and policies of the school board created in her a reasonable expectancy of continued employment. The record does not support this argument. Although witnesses were sworn, appellant did not testify at trial, and the stipulated facts do not include any statement that would justify a finding to that effect. The trial judge, whose duty it was to draw inferences from the testimony and stipulated facts, found against her on the points which she now would like to have this Court follow in reversing the judgment below.

It is not contested that plaintiff received notice as required by Section 5–7 of the Agreement between the Board of Education and the Nebo Education Association. She was entitled to no more. Any subsequent hearing or explanation of the reasons for not renewing her contract was merely a courtesy afforded plaintiff which the Board of Education did not have to extend.

There is no basis in law or fact to reverse this matter and require a hearing when neither the contract between the parties nor the statute required it in the first place.

We affirm the judgment as rendered. No costs are awarded.

HENRIOD, C. J., concurs.

BALDWIN, District Judge, concurs in the main opinion and also in the concurring opinion of CROCKETT, J.

CROCKETT, Justice (concurring, but noting exception).

I concur with the main opinion, except as to the comment concerning the Fourteenth Amendment to the Constitution of the

---

1. See the decision in the case of *Dyett v. Turner*, 20 Utah 2d 403, 439 P.2d * 266.

   \* (If "intransigence" means moral courage to stand for what one knows to be right, then I accept the title given me in Justice Crockett's opinion.)

2. 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

3. See *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

4. 510 F.2d 590 (Ct. of Appeals, 5th Cir. 1975).

5. Id. at 593.

United States. I am aware of and not without some appreciation and even admiration for Justice Ellett's unyielding intransigence in attacking that Amendment, as he has set forth in *Dyett v. Turner*, footnote 1, main opinion. However, I regard the Fourteenth Amendment as a fact accomplished more than a hundred years ago; and therefore, I think it should be given due deference and respect in all proper applications thereof. As to the issue involved in the instant case, Sec. 7, Article I, of the Constitution of Utah, provides that "No person shall be deprived of life, liberty or property, without due process of law." This follows the language of Amendment Five of the original first Ten Amendments to United States Constitution.

MAUGHAN, Justice (dissenting).

Here for review is an interpretation of the Utah Orderly School Termination Procedures Act, 53–51–1 et seq., Utah Code Annotated 1953 (enacted 1973), hereafter the Act; together with a document entitled "An Agreement between The Board of Education of the Nebo School District and the Nebo Education Association," hereafter the Agreement. All statutory references are to U.C.A.1953.

Plaintiff was employed as a fifth-grade teacher for the school years of 1973–74 and 1974–75. On March 27, 1975, she was notified by letter that she would not be offered a teaching contract for the coming school year. She requested a hearing before the Board of Education, which was granted. At the hearing the Board declined to state any reason for refusal to renew her contract. The Board further refused her request to summon and examine at the hearing plaintiff's immediate supervisor, Mr. Stansfield, the principal of the school.

A trial to the court produced a judgment holding the Act not applicable to plaintiff's fact situation, and dismissing plaintiff's complaint. We should reverse, and remand.

The Act has as its purpose, the formulation of orderly termination procedures, specification of standards of due process, and causes for termination. A board of education of a school district may do this by contract with its educators, or their associations; or by its own resolution. Here we deal with an agreement struck between the Board of Education of the Nebo School District and the Nebo Education Association; and also the provisions of the Act. The Act, as the law, is a part of plaintiff's contract, also a part of the Agreement.

The Act defines dismissal or termination, as: (1) any termination of the status of employment of an educator, and (2) failure to renew the employment contract of an educator, who pursuant to the employment practices of the school, has a reasonable expectation of continued employment in successive years.[1] It defines "educator" or "teacher," as teaching and professional personnel holding positions requiring certification and valid certificates from the state board of education.[2]

Required by the Act, to be included in any procedure for orderly dismissal adopted by a district, is a right to a fair hearing. This right must be read in conjunction with 53–51–6, which refers to "all hearings," and sets out the requisite procedure.

The Act goes on to cover the situation where a district intends not to renew the contract of employment of an individual entitled to employment in succeeding years, according to the district personnel program. In such situation, it provides for notice; the quality of the notice; that such notice leaves no doubt as to nonrenewal; and that it provide the "reasons" for the termination.[3]

The Agreement establishes two categories: career educators and qualifying educators. A career educator is one who has been in the employ of the district for a period of three consecutive years. As such, one is deemed re-employed for each succeeding year. The career educator's option

---

1. 53–51–3(2)(a), (b).

2. 53–51–3(3).

3. 53–51–5(1), (2).

to renew his contract for the succeeding school year may only be terminated for cause, after notice, and he is accorded a hearing. Plaintiff is not a career educator. The relevant provisions of the agreement relating to qualifying educators are:

5–6 Employment Period of Qualifying Educators.

Unless a contract of employment shall expressly provide otherwise, a qualifying educator shall be deemed to be employed for a period of one school year. *Each qualifying educator may deem himself reemployed for the succeeding year unless otherwise notified to the contrary by the board of education in the manner hereinafter provided.* [Emphasis added.]

5–7 Non-renewal of Qualifying Educator—Notice.

If the board determines not to reemploy a qualifying educator for an ensuing term, notice of such intention shall be given to the said educator in writing by personal delivery or by verified mail 60 days before the end of the current school year. Said notice shall contain the date of its execution and a clear and concise statement that the educator's contract will not be renewed for the coming school year.

By statutory definition plaintiff is an educator, and as such her status was terminated.[4] The statute says that any termination of an educator is a dismissal or termination. Plaintiff requested a hearing, thus was entitled to a fair hearing,[5] the elements of which are set out in 53–51–6. Although plaintiff was given a hearing it did not meet required standards.

Plaintiff was not allowed to produce witnesses, hear the testimony against her, nor to cross-examine witnesses. This procedure is contrary to statute and to our decided case law.[6]

The purpose of such a hearing is to determine whether the testimony against her or the reasons for her dismissal are arbitrary or capricious.

The claim is made by the board that plaintiff was employed for one year only. This claim is made on the basis of 35–6 of the Agreement.

It is clear that plaintiff occupied a probationary status as an educator, but the Act makes no distinction between a probationary status and any other; so far as the right to a fair hearing is concerned.

Employment of the methods for termination of the status of an educator brings plaintiff squarely within the provisions of the Act.

Had plaintiff been employed for the period of one year only, it would not have been necessary to terminate her status. Her status would have come to an end without need to rely on the Act, and the Act would then not have been applicable.

The *Roth, Sindermann* and *La Borde* cases, relied on to support the main opinion, are not applicable to the facts here for review. *Roth* turned on the fact the contract of employment provided employment for one year only, without any allusion to additional employment. *Sindermann* dealt with a custom developed over a number of years. *La Borde* turned on a Louisiana statute which dealt specifically with probationary teachers—a statute significantly different from our own.

Here we are confronted with our own statute, which provides termination procedures for *educators*, and Rosemary Abbott is an *educator*. In addition, a reading of the statute shows the right to a fair hearing (53–51–5(1)) to be an independent requirement. A requirement which becomes operative when the status of an *educator* is terminated.

Plaintiff's claim for damages in the form of salary, and other benefits; and for an order reinstating her could not be ordered with a reversal. We should remand the matter to secure to plaintiff the procedures she is entitled to under the Act. Whether plaintiff would be entitled to reinstatement,

**4.** 53–51–3.

**5.** 53–51–5.

**6.** *Hearn v. Utah Liquor Control Commission,* 548 P.2d 242 (Utah 1976).

back salary and other benefits would depend upon whether the reasons given for her termination were, or were not, arbitrary or capricious.