F I L E D
United States Court of Appeals
Tenth Circuit

JUN 18 2002

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

HELEN SUE WHITNEY,

      Plaintiff-Appellant,

v.

THE BOARD OF EDUCATION OF
GRAND COUNTY and BILL
MEADOR,

      Defendants-Appellees.

No. 00-4032

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:98-CV-202-B)

---

Andrew D. Roth of Bredhoff & Kaiser, P.L.L.C., Washington, D.C. (Robert H.
Chanin of Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Michael T. McCoy,
General Counsel, Utah Education Association, Murray, Utah, and David G.
Challed of Challed Law Office, Salt Lake City, Utah, with him on the briefs), for
Plaintiff-Appellant.

Brent A. Burnett, Assistant Attorney General, State of Utah (Jan Graham, Utah
Attorney General, Litigation Division, with him on the brief), Salt Lake City, UT,
for Defendants-Appellees.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**BROWN**,[*] Senior District Judge.

---

    [*]    Honorable Wesley E. Brown, Senior District Court Judge for the

                                      (continued...)

**EBEL**, Circuit Judge.

Helen Sue Whitney was fired from her position as a tenured teacher for the Grand County (Utah) School District based on accusations of poor classroom performance and assaulting a student. Whitney, who has been diagnosed as suffering from depression, brought suit alleging that her firing violated, inter alia, the Americans with Disabilities Act (ADA), two state statutes, and state contract law. The defendants in Whitney's suit are the Grand County School District Board of Education ("the School Board") and district superintendent Bill Meador (collectively "the Defendants"). The district court granted the Defendants' motion for summary judgment on all claims, and Whitney appeals. We reverse on the ADA claim as to the School Board and the state statutory claims as to both Defendants, and affirm on the ADA claim as to Meador and the breach of contract claim as to both Defendants.

## BACKGROUND

During the 1996-1997 school year, Whitney was a fourth grade teacher in an elementary school in Utah's Grand County School District, near Moab. She

*(...continued)
District of Kansas, sitting by designation.

had been a teacher in the district for nearly two decades, and she had tenure. Whitney had experienced classroom performance problems in the past: a 1987 letter from a school principal documented parental complaints regarding Whitney's hair pulling, ear twisting, knocking student's heads together, crying, and raising her voice. According to her principal, Whitney had been investigated by state social services sometime in the mid-1980's.

At the start of the school year, several parents asked the school principal to have their children transferred from Whitney's class, expressing concerns about Whitney's yelling at and ridiculing students, crying in the classroom, and similar allegations. Whitney maintains that she was not told of these concerns until a conference in January 1997, and that even then the principal did not specifically identify any problems with Whitney's classroom management. Defendants maintain, and Whitney does not dispute, that the principal discussed the following concerns with Whitney: "understanding and control of emotions, behavior management skills, parent perceptions, student perceptions, oral and written communication skills, and assistance from administrator."

On March 3, 1997, Whitney received a written evaluation from the principal. It stated in part, "While Ms. Whitney still needs to make significant changes to remediate the issues listed above, continued informal assistance rather than formal remediation is recommended at this time." The report reiterated

concerns regarding understanding and control of emotions ("use of terms of endearment [such as] 'Honey', 'Dear', and 'Dolly'") and behavior management skills ("using a low threatening growl or a forced smile").

On March 14, a committee of the Utah State Department of Human Services submitted a report to the principal and to Meador, which was based on classroom observation of Whitney. The report described Whitney's manner as "inappropriate," noting severe "mood swings" during which Whitney would suddenly become "angry and verbally abusive."

On March 19, a student in Whitney's class injured her foot on a piece of metal. The student wrote in a time-out book that "You [i.e. Whitney] Hurt My foot." Whitney's affidavit states that she "could have leaned into her" while "directing her to sit down" but that she did not intend to push the student and that Whitney could have lost her balance. The local police investigated but no charges were filed. Whitney was placed on leave pending an investigation by the state Division of Child and Family Services (DCFS).

On April 4, 1997, DCFS issued a preliminary report based on student and parent interviews. The report found that the allegation of physical abuse arising on March 19 was substantiated, and that seven of sixteen other allegations of emotional abuse by Whitney investigated by DCFS were also substantiated. The report "cautioned that Ms. Whitney may be high risk for self destructive

behaviors as well, which could include suicide attempts," and that she should be cleared psychiatrically. On April 7, Meador notified Whitney that she was being formally suspended pending the final DCFS report.

Whitney responded on April 14 with a letter in which she stated that her recent problems arose from "either an actual or perceived disability relating to my mental competency." She stated "it is obvious to me, as it may be to you, that I will require a reasonable accommodation. Accordingly, I hereby request a reasonable accommodation . . . ."

The same day, Meador responded with a letter which stated, "It is impossible to respond to your request without obtaining further information." He asked Whitney to provide the following within ten working days:

> Please specifically identify the disability which you claim. If there is a diagnosis regarding your "mental competency" by a licensed professional or a DSM IV diagnosis, please send such diagnosis to me. If not, then the School District must request that you submit to a diagnosis by a qualified professional to assess whether you are capable of performing essential job duties. Please identify any specific job duties you believe you are unable to perform as a result of your mental incompetency.
> In addition, you must specify the accommodation(s) you are requesting. Your request is too vague to form an idea about what you have requested and what may be reasonable under the circumstances.

On April 18, Whitney responded by letter that she could not provide the information Meador requested, because "nobody has told me what I am doing or

not doing that constitutes the basis of my suspension." She thanked Meador for what she characterized as his offer to pay for an evaluation, but suggested that such evaluation could not occur until the district had given her "specific information about my conduct" that led to her suspension.

On April 21, Meador gave Whitney by letter "notice of termination of your employment for cause effective 15 days after the date of this letter." Meador's letter informed her that pending the date of termination she would be placed on leave with pay. The letter stated that Whitney had the "right to a hearing before the Board of Education to appeal this decision to terminate your employment for cause." Failure to request a hearing, the letter stated, would constitute waiver of Whitney's right to appeal.

The April 21 letter explained that "we are not aware of any disability perceived or otherwise. . . . and we are not aware of any possible accommodation." No evaluation was necessary, Meador wrote, because no identified disability had been claimed. The stated grounds for termination were failure to fulfill duties and responsibilities, incompetence or inefficiency, inability to maintain classroom discipline, behavior outside of acceptable community standards, "failure to maintain effective working relationships, or maintain good rapport, with parents, the community, or colleagues," and assault on an employee or student.

Whitney requested a hearing before the School Board, and in preparation of the hearing she was examined by a licensed psychologist, Dr. James A. Ferro, on May 7 and 14. The school board hearing was held June 17. Dr. Ferro testified at length and submitted his written evaluation. He stated that Whitney had become clinically depressed in late 1996, and he diagnosed her as suffering from Major Depressive Disorder, Single Episode, In Partial Remission and Personality Disorder Not Otherwise Specified, with Narcissistic Features. Dr. Ferro concluded in his report, "Since Ms. Whitney's disorder of affect and behavior is remediable by psychotherapeutic intervention and since, at the time of this writing, Ms. Whitney is very motivated to engage in counseling, this examiner considers it very likely that she [will] be able to resume her teaching duties in the Fall of 1997." In testimony before the board, Dr. Ferro stated that "I really believe that she's capable of being able to remediate," and he recommended that she be reevaluated in three months to determine whether she is fit to return to the classroom.

In its written findings and conclusions, the School Board "SUSTAIN[ed] the recommendation of Superintendent Meador to terminate Ms. Whitney's employment for the causes stated in his 21 April 1997 letter to Ms. Whitney." It stated that "[t]he decision to terminate Ms. Whitney's employment is based solely on her conduct and performance related issues." (Id. at 228.)

- 7 -

Whitney filed suit against the School Board and Meador in Utah state court on February 24, 1998. On March 20, 1998, the Defendants removed to federal court in the District of Utah. On December 15, 1998, Whitney filed an amended complaint. She asserted causes of action under the ADA, 42 U.S.C. § 1983 for alleged violations of due process and equal protection, two state statutes – the Utah Orderly School Termination Act ("Termination Act"), Utah Code Ann. §§ 53A-8-101 to -107, and the Educator Evaluation Act ("Evaluation Act"), Utah Code Ann. §§ 53A-10-101 to -111 – and for breach of contract. Defendants answered on January 21, 1999, and on April 8, 1999 moved for summary judgment on all claims.

On September 27, 1999, the district court granted Defendants' summary judgment motion as to all claims. It later denied Whitney's Rule 59(e) motion to set aside its judgment as to the state law claims. Whitney filed a timely notice of appeal on February 11, 2000, abandoning her due process and equal protection claims and challenging the rejection of her ADA, state statutory, and breach of contract claims.

## DISCUSSION

Judgment granting or denying a motion for summary judgment under Federal Rule of Civil Procedure 56 is reviewed de novo, applying the same

standard employed by the district court.  <u>Kingsford v. Salt Lake City Sch. Dist.</u>, 247 F.3d 1123, 1127-28 (2001).  Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact.  <u>Id.</u>

## I. ADA Claim

The ADA mandates in relevant part that "[n]o covered entity shall discriminate against a qualified individual with a disability."  42 U.S.C. § 12112(a).[1]  Discrimination, as defined in the ADA, includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."  § 12112(b)(5)(A).  Disability, as defined in the ADA, means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

---

[1] We note that sovereign immunity presents no obstacle to Whitney's suit here.  Although the Eleventh Amendment bars ADA claims against states, <u>Bd. of Trustees of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 360 (2001), we have held that Utah school districts are not arms of the state and thus are not entitled to Eleventh Amendment immunity.  <u>Ambus v. Granite Bd. of Educ.</u>, 995 F.2d 992, 997 (10th Cir. 1993) (en banc).

§ 12102(2). Whitney's only claim is that she suffered from an actual impairment; accordingly, we do not consider the "record of" or "regarded as" prongs.

If a mental limitation is not "known" to the employer, then any failure to accommodate that limitation is not discrimination within the meaning of the ADA. § 12112(b)(5)(A). The district court regarded this provision as dispositive because "[i]t wasn't until after her suspension that Whitney informed Meador that she had a disability." The problem with this conclusion, however, is that Whitney is challenging her termination, not her suspension. It is therefore irrelevant whether the Defendants knew of her limitation at the time of the suspension if they knew of her limitation when she was terminated. In light of Dr. Ferro's testimony, including his diagnosis that Whitney suffered from major depression, it is clear that Whitney's condition was "known" to the School Board at the time it voted to terminate her. We thus are compelled to conclude that the district court's reasoning in dismissing the ADA claim against the School Board was erroneous.

Conversely, this same reasoning dictates that Meador did not violate the ADA by any actions that he took prior to the School Board's termination decision. Indeed, Whitney appears to have conceded any ADA claim she had asserted against Meador. (See Aplt B. at 19 (arguing that it is irrelevant what Meador

knew about Whitney's condition)); (Aplt R.B. at 1 (same).) Accordingly, we affirm summary judgment on the ADA claim as to Meador.

At oral argument on appeal, the Defendants argued for the first time that Whitney actually had been terminated by Meador per the April 21 letter, rather than by the School Board in its written findings and conclusions. The board hearing, the Defendants argue, merely afforded Whitney the opportunity to appeal a decision that already had been made. Thus, they argue, Whitney had not made her disability known to the Defendants at the time that the termination decision was made, and summary judgment may be affirmed on this alternative ground.

We conclude that the Defendants' argument to support summary judgment is foreclosed by material factual issues in the record. Indeed, reviewing the record, we find that the evidence strongly supports an argument that the School Board, rather than Meador, was responsible for terminating Whitney's employment. Meador's April 21 letter did not purport to terminate Whitney. Instead, it gave her "notice of termination," and specifically stated that Whitney would continue to be paid "[p]ending the date of termination." It also stated that Whitney had the right to appeal Meador's decision. Further, it is clear that the School Board itself viewed Meador's decision as merely a recommendation rather than a final decision. When the board issued its written findings and conclusions, it referred to Meador's action as the "recommendation of Superintendent Meador

- 11 -

to terminate Ms. Whitney's employment." At the termination hearing, the administration attorney argued to the board why "it's necessary that we recommend termination to the Board of Education." Finally, the board's use of the present tense is significant in stating that "[t]he decision to terminate Ms. Whitney's employment is based solely on her conduct and performance related issues."

Further support for the conclusion that Whitney was fired by the School Board rather than Meador is to be found in the terms of Whitney's only written contract contained in the record. The contract was signed by the School Board president on behalf of the School Board, and was not signed by Meador. The contract stated that "this contract may be cancelled by the Board at any time . . . for misconduct, poor health, incompetence or insubordination on your part."

Finally, we note that the suggestion that superintendents rather than school boards are responsible for firing teachers appears to be quite a novel one under Utah law. With a single exception,[2] published decisions involving wrongful termination suits brought by Utah teachers all have involved a school board as the sole defendant. See Durfey v. Bd. of Educ. of Wayne County Sch. Dist., 604 P.2d

---

[2]    Our research has uncovered only one early case involving teacher termination in which the teacher named a superintendent as a defendant, and the naming of the superintendent in that case may be explainable by the fact that the plaintiff also sought to restrain the defendants from transferring him. See Brough v. Bd. of Educ. of Millard County Sch. Dist., 460 P.2d 336, 337 (Utah 1969).

480 (Utah 1979); Pratt v. Bd. of Educ. of Uintah County Sch. Dist., 592 P.2d 628 (Utah 1979); Stringham v. Jordan Sch. Dist., 588 P.2d 698 (Utah 1978); Rowley v. Bd. of Educ. of Duchesne County Sch. Dist., 576 P.2d 865 (Utah 1978); Brown v. Bd. of Educ. of Morgan County Sch. Dist., 560 P.2d 1129 (Utah 1977); Broadbent v. Bd. of Educ. of Cache County Sch. Dist., 910 P.2d 1274 (Utah Ct. App. 1996); cf. Bd. of Educ. of Alpine Sch. Dist. v. Ward, 974 P.2d 824 (Utah 1999) (declaratory judgment action brought by school board regarding termination of teachers).

We do not here decide as a matter of law whether Whitney was fired by the School Board or Meador. That issue involves a factual determination of the sort generally reserved for the fact finder. We hold simply that material issues of fact preclude affirming summary judgment in favor of the Defendants on their proposed alternative ground that Whitney was fired by Meador rather than the School Board.

The Defendants' remaining arguments for affirming summary judgment on the ADA claim are similarly unavailing. They argue that Whitney's firing was permissible under the ADA because she posed a "direct threat" to the safety of her students. 42 U.S.C. §§ 12111(3), 12113. We reject this argument, at least as

a basis for summary judgment.[3]  The direct threat defense applies where the employee poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."  § 12111(3).  Here, there is a material factual issue regarding whether Whitney posed any significant risk to the students and, if so, whether that risk could be eliminated by reasonable accommodation. Accordingly, the asserted direct threat is not an appropriate basis for summary judgment.  The Defendants also argue that Whitney has failed to allege substantial limitation of a major life activity, 42 U.S.C. § 12102(2)(A), an argument not considered by the district court below.  Because the resolution of this argument is not clear from the record, we decline to consider it in the first instance.  Cf. Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1228-29 (10th Cir. 1996).

In sum, the district court's grant of summary judgment on the ADA claim is affirmed as to Meador but reversed as to the School Board.

## II. State Statutory Claims

Whitney appeals the summary judgment granted in favor of the Defendants on claims brought under two Utah state statutes.  The first statute is the

---

[3]  Because we reject the Defendants' direct threat argument on the merits, we do not reach Whitney's argument that the Defendants waived the defense by asserting it for the first time in their motion for summary judgment.  Cf. Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1089 (10th Cir. 1997) (describing direct threat defense as an affirmative defense).

Termination Act, Utah Code Ann. §§ 53A-8-101 to -107, which establishes procedures for firing employees of local schools. The second statute is the Evaluation Act, Utah Code Ann. §§ 53A-10-101 to -111,[4] which sets out procedures for reviewing teacher performance. In essence, Whitney alleges that each statute entitled her to more notice of her alleged performance deficiencies, and how to correct them, than she actually received, an entitlement that she contends is enforceable through private suit. The district court granted the Defendants' motion for summary judgment on Whitney's claims under both statutes, holding that neither statute afforded a private right of action.[5] We reverse.

In interpreting state law, we are bound by the holdings of the state's highest court, and absent such holdings we are obliged to predict how that court would

---

[4] The Evaluation Act was amended effective July 1, 2001, by the Utah legislature. See 2001 Utah Laws 86 (S.B. 16.) The changes are minor and not relevant to the disposition of this case.

[5] In the alternative, the court held that Whitney had failed to provide a timely notice of claim as required by the Governmental Immunity Act, Utah Code Ann. § 63-30-13. This alternative holding is erroneous. Under well-settled Utah law, no notice of claim is required as to equitable claims. See Am. Tierra Corp v. City of West Jordan, 840 P.2d 757, 759 (Utah 1992) (citing El Rancho Enters., Inc. v. Murray City Corp., 565 P.2d 778, 779 (Utah 1977)). The relief sought by Whitney is reinstatement with backpay, which is equitable relief. Thurston v. Box Elder County, 892 P.2d 1034, 1040-41 (Utah 1995). The district court's discussion of the notice of claim issue – a single sentence – does not address the equitable relief exception. We conclude that Whitney's failure to file a notice of claim provides no support for the district court's holding on the Evaluation Act and Termination Act claims.

rule, giving proper regard to the relevant rulings of lower state courts.  Comm'r v. Bosch's Estate, 387 U.S. 456, 464-66 (1967); Fransen v. Conoco, Inc., 64 F.3d 1481, 1492 n.10 (10th Cir. 1995).

Here, the Utah Supreme Court has not specifically addressed whether individuals enjoy an implied private right of action under either the Evaluation Act or the Termination Act.  Whitney notes that the state supreme court has decided several cases asserting private claims under the Termination Act.  See Rowley, 576 P.2d 865; Abbott v. Bd. of Educ. of Nebo Sch. Dist., 558 P.2d 1307 (Utah 1976).  In each of those cases, the court reached the merits of the private plaintiff's claim and did not question whether the plaintiff enjoyed a right of action under the Termination Act.  See Rowley, 576 P.2d at 866-67 (holding Act does not bar dismissal for cause); Abbott, 558 P.2d at 1307 (affirming judgment that the Act was not applicable to the factual situation presented).  She cites no analogous cases, and we have found none, involving the Evaluation Act.  Whitney argues that these cases offer some evidence that a private right of action exists under the Termination Act.  On the other hand, the Utah Supreme Court in a different context has cited favorably an Iowa case for the proposition that "where [a] statute does not expressly authorize private suits, no cause of action [exists]

absent legislative intent." Rollins v. Petersen, 813 P.2d 1156, 1164 (Utah 1991) (citing M.H. v. State, 385 N.W.2d 533 (Iowa 1986)).[6]

Turning to persuasive lower court case law, the Utah Court of Appeals has addressed whether the Evaluation Act confers a private right of action, albeit somewhat confusingly. See Broadbent v. Bd. of Educ. of Cache County School Dist., 910 P.2d 1274 (Utah Ct. App. 1996). In Broadbent, the plaintiff was a provisional, untenured teacher who alleged that her contract was not renewed in retaliation for speaking out for the rights of disabled students. Id. at 1276. She sued the school district, alleging that the non-renewal did not comply with the procedural requirements of the Evaluation Act. Id. The plaintiff in Broadbent did not seek to assert a claim under the Termination Act.

The Utah Court of Appeals clearly rejected the plaintiff's claim, but the ground for its holding is somewhat uncertain. At the outset of its decision, the court concluded that the plaintiff's non-renewal "occurred due to factors wholly outside the scope of" the Evaluation Act. Id. at 1278. Thus, the court appears initially to have disposed of the plaintiff's claim on the merits.

However, the opinion went on to inquire whether the plaintiff had a right of action under the Evaluation Act in the first place. That analysis focused on the

---

[6] The issue before the court in Rollins was whether violation of a state statute gave rise to a tort cause of action pursuant to the doctrine of negligence per se.

fact that "the [Evaluation Act] makes a distinction between 'career educators,' who are entitled to rely on continuing employment, and 'provisional educators,' who have not yet reached career status." Id. at 1279. Much of the language in this section of the opinion suggests that Broadbent's holding is that only provisional educators have no cause of action under the Evaluation Act. See, e.g., id. (stating that analysis of Cort v. Ash factors for implying private causes of action does not "convince us that the [Evaluation Act] is meant to provide provisional educators with a private cause of action"); id. at 1280 (stating that both the Evaluation Act and the Termination Act "incorporate the distinction between career and provisional educators" and concluding that "[t]o allow Broadbent a private right of action would be to override" this distinction). Whitney argues that the clear negative implication of the above reasoning is that career teachers (such as Whitney) do enjoy a private cause of action under the Evaluation Act. However, interwoven with this language is language suggesting that no plaintiffs enjoy a private right of action under the Evaluation Act. See, e.g., id. at 1278 ("[T]he courts of this state are not generally in the habit of implying a private right of action based upon state law, absent some specific direction from the legislature."); id. at 1279 ("[T]here is no indication in the [Evaluation Act] that the legislature intended to create a private remedy.").

Broadbent, then, is significant to our inquiry in two respects. First, it supports somewhat more clearly than Rollins the Defendants' argument that Utah law disfavors implied private rights of action. Id. at 1278. Second, it suggests that no private right of action is available under the Evaluation Act, although this language appears to be dicta. Ultimately, we conclude that, like the Utah Supreme Court case law discussed above, Broadbent fails definitively to resolve the issue before us.

Because the state courts have not resolved the statutory interpretation question presented here, we undertake our own examination of the text, structure, and purposes of the statutes. Several considerations bear upon our analysis. Most importantly, our review of Utah law leads us to conclude that no means of enforcing the Acts' provisions exists unless an implied private right of action is recognized. Neither the Evaluation Act nor the Termination Act expressly provide for any means by which their mandatory provisions may be enforced. Utah's Administrative Procedure Act – which generally provides a cause of action against state agencies for the enforcement of law and the vindication of legal rights – expressly excludes from its scope teacher employment disputes. Utah Code Ann. § 63-46b-1(2)(d) ("This chapter does not govern . . . state agency actions to evaluate, discipline, employ, transfer, reassign, or promote . . . teachers in any school or educational institution, or judicial review of those actions . . . .").

- 19 -

Nor does it appear that any other statute provide for any means of enforcement of either Act.

An interpretation that renders the statutes in question merely precatory is problematic because both statutes are framed in mandatory language.  E.g., Utah Code Ann. § 53A-8-103 ("A local school board <u>shall</u> . . . establish procedures for dismissal of employees in an orderly manner without discrimination." (emphasis added)); § 53A-10-106 ("Any educator evaluation program adopted by a local school board . . . <u>shall</u> provide the following: . . . personal notice to the educator . . .; a reliable and valid evaluation . . . ." (emphasis added)); § 53A-10-107 ("(1) An educator whose performance is inadequate . . . <u>shall</u> be provided with a written document clearly identifying deficiencies, the available resources for improvement, and a recommended course of action that will improve the educator's performance.  (2) The district <u>shall</u> provide the educator with reasonable assistance to improve performance." (emphasis added)).  Such mandatory language is a powerful indication that the Utah legislature intended the Acts to be legally enforceable.  <u>Cf.</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 451 U.S. 1, 24 (declining to infer a private cause of action because statute spoke in terms "intended to be hortatory, not mandatory"); <u>Bd. of Educ. of Granite Sch. Dist. v. Salt Lake County</u>, 659 P.2d 1030, 1035 (Utah 1983) (stating that the term "'shall' . . . is usually presumed mandatory," and holding the defendant liable for

violation of statute partly because "'shall,' a word with a usually accepted mandatory connotation, has been used throughout the statutory provisions").

The inference arising from the Acts' mandatory language is directly supported by the following subsection of the Termination Act:

> **Hearings before district board or hearing officers —**
> **Rights of employee — Subpoenas — Appeals.**
> (1) (a) Hearings are held under this chapter before the board or before hearing officers selected by the board to conduct the hearings and make recommendations concerning findings.
> (b) The board shall establish procedures to appoint hearing officers.
> (c) The board may delegate its authority to a hearing officer to make decisions relating to the employment of an employee which are binding upon both the employee and the board.
> (d) <u>Subsection (1) does not limit the right of the board or the employee to appeal to an appropriate court of law.</u>

§ 53A-8-105(1) (emphasis added). Subsection (1)(d) was added effective July 1999, and has not been construed by the Utah courts. While subsection (1)(d) by its terms is merely a rule of construction rather than an affirmative grant of a cause of action, the subsection would be utterly superfluous if school "employees" such as Whitney enjoyed no "right . . . to appeal" school board decisions to a court of law. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992) (courts should disfavor interpretations of statutes that render language superfluous); Platts v. Parents Helping Parents, 947 P.2d 658, 662 (Utah 1997) ("We will avoid an interpretation that renders portions of, or words in, a statute superfluous or inoperative." (citation omitted)).

At oral argument on this appeal, the Defendants argued that § 53A-8-105(1)(d) serves only to permit a state-court appeal from the school board decision to the Utah Court of Appeals. They argued that this provision does not acknowledge the propriety of a separate judicial attack on the school board action, particularly when that attack is proceeding in federal court. We find this argument unpersuasive at best. First, we conclude that the fact that the present action has been litigated in federal court to be irrelevant in this case; Whitney filed this action in state court, and it was the Defendants who elected to remove it to federal court. Second, the Defendants have produced no authority, statutory or otherwise, in support of their suggestion that Whitney was obligated to assert her Evaluation Act and Termination Act challenges in the state court of appeals rather than the state trial court. To the contrary, it appears that all such claims decided by the Utah courts originated at the trial court level. See, e.g., Elwell v. Bd. of Educ. of Park City, 626 P.2d 460, 463 (Utah 1981) (noting that Termination Act action was filed and tried in Utah district court); Abbott, 558 P.2d at 1307 (noting that plaintiff's Termination Act claim was tried to judgment); Broadbent, 910 P.2d at 1275 (noting that Evaluation Act claim was dismissed on summary judgment by trial court).

While we acknowledge that Utah case law does not speak with perfect clarity on the issue before us, our review of that case law and the statutes in

- 22 -

question persuades us that the Utah Supreme Court would infer private rights of action under the Evaluation Act and the Termination Act. Accordingly, we reverse the district court's decision to grant summary judgment in favor of the Defendants on the Evaluation Act and Termination Act claims.

### III. Breach of Contract Claim

Whitney alleged that she was denied "an opportunity to remediate unsatisfactory or problem behaviors" with assistance from the Defendants, and that such denial constituted a breach of her contract. She argues that this right to remediation was incorporated into the terms of her contract because such remediation was mandated by the school district's written personnel policies, and such policies become part of every teacher contract. Whitney asserts that these policies establish a mandatory three-step process that must be followed prior to termination: informal remediation, formal remediation, and probation.

Although Whitney claims that board policy is incorporated into the terms of teacher contracts, she has failed to include in the record either her contract or any board policy. The Defendants included Whitney's contract for the 1977-78 school year in the record, and this contract does not purport to incorporate board policy

into the terms of the contract.[7] The only evidence identified by Whitney that such policies were incorporated into the terms of her contract is the affidavit of James L. Walker, who was President-elect of the local education association at the time that one of the policies was negotiated between the board and the education association. He asserts, "I personally know it was the intent of the [education association] and the Grand County Board of Education . . . that no teacher be terminated for the reasons listed in Policy 4155B without first implementing formal remediation and probation."

In her reply brief on appeal, Whitney concedes that "defendants are correct in pointing out that the affidavit evidence submitted by Whitney in opposition to Defendants' motion for summary judgment on her breach of contract claim consisted entirely of 'parol evidence.'" However, she argues that Utah's parol evidence rule does not bar the affidavit testimony, because that rule would bar her evidence "only if . . . the parol evidence . . . was <u>at odds with</u> the terms of the School Board's written remediation and termination policies." (Emphasis added.)

---

[7] The 1977-78 contract states that "You [i.e., Whitney] are hereby subject to the direction of the Superintendent and/or the Principal and to the rules and regulations of the Board of Education . . . ." Whitney does not argue that this provision amounts to an incorporation of board policy generally into the contract. Nor does it appear that such an argument would be availing; this provision identifies Whitney, and not the School Board, as the party contractually bound to adhere to board policies.

Whitney's argument relies upon an erroneous statement of the law. The parol evidence rule bars additional terms as well as contrary terms. As Whitney herself states, Utah's parol evidence rule "'exclude[s] evidence of . . . statements offered for the purpose of varying <u>or adding to</u> the terms of an integrated contract.'"[8] (Emphasis added) (quoting <u>Ward v. Intermountain Farmers Ass'n,</u> 907 P.2d 264, 268 (Utah 1995)). Because Whitney seeks to add an additional term to her contract – that termination be preceded by a three-step remediation process – the proffered additional term is barred from consideration by the parol evidence rule. The policies themselves are not included in the record and the contract itself includes no remediation requirement. We therefore find that Defendants' motion for summary judgment on this claim was properly granted.

## CONCLUSION

We REVERSE the district court's grant of summary judgment in favor of the School Board on the ADA claim and we REVERSE the district court's grant of summary judgment in favor of the Defendants on the Evaluation Act and Termination Act claims, and we REMAND for further proceedings. We AFFIRM summary judgment in favor of the Defendants on to the breach of contract claim and in favor of Meador on the ADA claim.

---

[8] Whitney does not dispute that the relevant contract is integrated.